In the Matter of the Petition for the Appointment of a General Guardian of MAUDE and MABEL HUBBARD, Infants; JOHN D. WESTLAKE, Appellant; CHARLES A. HUBBARD, Respondent.

The Supreme Court has no jurisdiction to appoint a guardian for an infant where the infant is not within the jurisdiction, or domiciled there, and has no property therein.

*It seems*, that if an infant is a resident within the jurisdiction, although not domiciled and having no property there, the court has power to appoint a guardian; so, also, property gives jurisdiction to appoint a guardian thereof, although the infant is out of the jurisdiction and a resident abroad.

The bringing of an infant, however, into this State by stratagem for the purpose of giving jurisdiction, will not avail.

On application for the appointment of a guardian for two infants, it appeared that the legal domicile of their father was in Rhode Island. One of them was, at the time of the application, in that State, and the other had been, a few days prior to that time, secretly taken without the knowledge of her father or her relatives from Rhode Island, and brought into this State for the purpose of bringing her within the jurisdiction of the court, and in aid of the proceedings. Neither of the infants had any property in this State. The Special Term appointed a guardian residing in this State; the General Term, on appeal, reversed the order and

appointed a resident of Rhode Island as guardian. *Held,* that both appointments were erroneous ; that the legal domicile of the infants was in Rhode Island, as the domicile of the father was the domicile of his infant children ; and that the Supreme Court had no jurisdiction.

(Submitted June 15, 1880 ; decided September 21, 1880.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, reversing an order of Special Term which appointed the appellant, John D. Westlake, as general guardian of the persons and estates of Maude and Mabel Hubbard, infants ; the order of General Term appointed the respondent, Charles A. Hubbard, as such guardian.

The facts are sufficiently set forth in the opinion.

*George W. Ellis* for appellant. The court erred in directing the appointment of a non-resident as guardian. (76 Ill. 411 ; Wend. Note, 13 ; 1 Black. Com. 163 ; Forsyth's Custody of Infants, 135 ; 25 Wend. 103, 104 ; Willard's Eq. Jur. 619, 620 ; *In re O'Neal,* 3 Am. Law Rev. 578, 579 ; *Foster* v. *Mott,* 3 Bradf. 411, 412.) The State in which a ward is domiciled is that which is charged with his protection, and it is that which should nominate and direct the guardian of such ward. (Whart. on Conflict of Laws, § 259.) The fact of the children, or either of them, being abroad does not deprive the court, upon a petition on their behalf, from exercising its jurisdiction as the court of their domicile. (*Hope* v. *Hope,* 4 DeG., M. & G. 328 ; 2 White & Tudor's L. C. [4th Am. from 4th London ed.] 1444 ; 3 Wait's Actions and Defenses, 536 ; *Ex parte Southcot,* 2 Ves. 401 ; Shelf. on Lunacy, 19, 99.) The domicile of the children remains with that of their father in the State of New York. (*Isham* v. *Gibbons,* 1 Bradf. 69, 85 ; *Depuy* v. *Wurtz,* 53 N. Y. 556 ; Whart. on Conflict of Laws, §§ 56, 59 ; *Sears* v. *City of Boston,* 1 Metc. 250 ; 2 Wait's Actions and Defenses, 632 ; 2 id. 651 ; *Monroe* v. *Douglass,* 5 Madd. 403 ; Whart. on Laws of Domicile, 13 ; 4 Barb. 419.) As a ward of this court and State, Gaius Hubbard could not change his domicile. (Laws of 1874, chap. 446, § 37 ; Ordronaux on Insanity, 107,

108, 130, 149, 152, 157, 223 ; Laws of 1874, chap. 446, § 1, title 2.) Charles A. Hubbard, being a non-resident, was disqualified for appointment as an officer of this court. (1 R. S. 109, 116, 122 ; *People* v. *Clute*, 50 N. Y. 451.)

*Geo. W. Van Slyck* for respondent. The domicile and the forum of the infants are in Rhode Island and not in this State, and hence the courts of this State had no jurisdiction to appoint a general guardian. (*Brown* v. *Lynch*, 2 Bradf. 214, 219 ; *Andrews* v. *Herrot*, 4 Cow. 516, note 2 ; *Ames* v. *Duryea*, 6 Lans. 157 ; Whart. on Conflict of Laws, § 42 ; 4 Phil. on Domicile, 75 ; *Ryall* v. *Kennedy*, 40 Sup. Ct. [8 J. & S.] 360; 67 N. Y. 379 ; *Hoskins* v. *Matthews*, 35 E. L. & E. 535 ; 3 Vesey, 198, 201 ; 6 Lans. 157 ; Story on Conflict of Laws, § 46 ; *Bruce* v. *Bruce*, 2 Bos. & Pull. 229 ; 1 Binn. 349 ; *The Harmony*, 2 Rob. 322.) Domicile may be acquired by operation of law by those who are under the control of another. (Phil. on Domicile, 32 ; *Holyoke* v. *Haskins*, 5 Pick. 20 ; *Pottinger* v. *Wightman*, 3 Mer. 67 ; 2 Pars. on Cont. 582; *Anderson* v. *Anderson*, 42 Vt. 350 ; *Wood* v. *Wood*, 5 Paige, 596.) One of the minors having been clandestinely brought here for the purpose of this proceeding, the courts of this State will not assume jurisdiction over her. (*Smith* v. *Myers*, 1 T. & C. 655 ; *Goupel* v. *Simmons*, 3 Abb. 474; *In the Matter of Lagrave*, 45 How. 305 ; *Carpenter* v. *Spencer*, 2 Sandf. 717.)

ANDREWS, J. The jurisdiction of the Court of Chancery over the persons and property of infants, and to appoint guardians of their persons and estates, whatever may have been its origin, is universally conceded, and is one of the most useful and important functions which it is called upon to exercise. (Story's Eq. Jur., § 1327 *et seq.*) The power formerly possessed in this State by the Chancellor is now vested in the Supreme Court which exercises, through its judges, the same jurisdiction over infants in awarding the custody and care of their persons and property as was possessed and exercised by that officer. (*Wilcox* v. *Wilcox*, 14 N. Y. 575.) This jurisdiction of neces-

sity can only be exerted in respect of persons or property within the jurisdiction. The jurisdiction does not depend upon the legal domicile of the infants. It is sufficient if the infant is a resident within the jurisdiction of the court where the proceedings are taken. This was determined by the House of Lords in *Johnstone* v. *Beattie* (10 Cl. & Fin. 43), in which case it was held that the English Court of Chancery had power to appoint guardians for an infant who was a resident in England, notwithstanding she had no property there, and her domicile was in Scotland. So on the other hand, property gives jurisdiction to appoint a guardian thereof, although the infant, in whose behalf the application for guardianship is made, is out of the jurisdiction, and a resident abroad. (*Logan* v. *Fairlee*, 1 Jacob, 193; *Stephens* v. *James*, 1 M. & K. 627; *Salles* v. *Savignon*, 6 Ves. 572.) But if the infant is not within the jurisdiction or domiciled there, and has no property therein, manifestly there is no basis for the interposition of the court. The State assumes no duty, as it can exercise no control, in respect of persons or property not subject to its jurisdiction. In this case one of the infants in whose behalf the application was made for the appointment of a guardian was at the time of such application in Rhode Island, where she was taken in 1875, and where she has ever since remained. The other had been in Rhode Island from August, 1875, until a few days before the proceedings were instituted, in March, 1878, when she was secretly taken by the son-in-law of the petitioner from the school she was attending in Providence, without the knowledge of her father, or of any of her relatives in Rhode Island, and brought into this State, and taken to the house of the petitioner, her maternal grandfather, where she has since lived. The circumstances disclosed tend to show that her removal from Rhode Island was for the purpose of bringing her within the jurisdiction of the court, and in aid of the contemplated proceedings for the appointment of a guardian. Neither of the infants, so far as appears, had any property in this State. Their father was living. He was born in Rhode Island, but removed to New York in 1858 or 1859, where he

engaged in business and married. His wife died in 1873, leaving the two children, the fruit of the marriage, whose guardianship is the subject of this controversy. The father, in July, 1875, becoming suddenly insane was taken by his brother to Providence, where the latter resided, and placed in an insane asylum, from which he was discharged on his recovery in November, 1875, and was placed in the asylum again in July, 1877, on a recurrence of his malady. He never returned to New York to reside after he was taken to Providence, in July, 1875.

It was claimed that he changed his domicile. The issue whether after his recovery from his first illness, he intended to, and did abandon his domicile and residence in New York, and take up his residence in Providence with the intention of permanently remaining there, was strongly contested, and a great number of facts and circumstances bearing upon this issue were proved. The Special Term, in confirming the report of the referee, found that he did not change his domicile, and that New York was still the domicile of the father, and his infant children. The General Term reversed the order of the Special Term, appointing a guardian, and as the opinion discloses, the court disagreed with the Special Term, upon the question of domicile, and in addition to reversing the order of the Special Term, directed the proceedings to be remitted to the Special Term for the appointment of Charles A. Hubbard, a resident of Providence, and the uncle of the infants, as their guardian.

Without reviewing at length the facts bearing upon the question of domicile, we content ourselves with stating our concurrence with the conclusion of the General Term, that Rhode Island was the legal domicile of the father of the infants when these proceedings were instituted, and from this it follows that their domicile was in that State also, as the domicile of the father is the domicile of his infant children. (*Andrews* v. *Herriot*, 4 Cow. 516, note; *Ludlam* v. *Ludlam*, 26 N. Y. 356; *Kennedy* v. *Ryall*, 67 id. 386; Story on Conflict of Laws, § 46.) This fact being assumed, we are of opinion that the order of the Special Term was properly reversed on the

ground that the case was not one of which the court should have entertained jurisdiction.  There was neither residence, domicile nor property, to give jurisdiction.  The bringing of one of the infants into this State by stratagem for the purpose of giving jurisdiction will not avail.  The court will not sanction such a method of invoking its jurisdiction.

We are of opinion that the order reversing the order of the Special Term should be affirmed, but we do not see how the appointment directed by the General Term could properly be made.

The order appealed from should, therefore, be modified by making the order one of reversal simply, without costs to either party in this court.

All concur.

Ordered accordingly.