## LEHMER v. HARDY et ux.

(Court of Appeals of District of Columbia. Submitted October 8, 1923. Decided December 3, 1923.)

No. 4002.

1. **Guardian and ward** ⬅️**8—Order of court purporting to appoint guardian of nonresident held void.**

Where the maternal and the paternal grandparents of a minor, whose parents had been killed, resided in New York, a decree of the Supreme Court of the District of Columbia purporting, under Code D. C. § 150, to appoint a guardian of such minor's person rendered in her absence without notice, *held* void, though the District of Columbia had been the domicile of her parents.

2. **Parent and child** ⬅️**15—On parents' death, paternal grandfather becomes guardian, entitled to change minor's domicile.**

Upon the death of a minor's parents, the paternal grandfather becomes her natural guardian, and by virtue of the fact that he then stands in loco parentis he has the right to change or fix the minor's domicile.

3. **Infants** ⬅️**3—Entitled to protection of laws of state in which he abides.**

A minor, like any other person, is entitled to the protection of the laws of the state or territory in which he abides.

4. **Guardian and ward** ⬅️**8—Domicile determines appointment of guardian of person.**

The domicile determines the court which has jurisdiction to appoint a guardian of the person.

5. **Guardian and ward** ⬅️**8—Situs of property determines appointment of guardian of estate.**

The location or situs of any property of the ward determines the court which has jurisdiction to appoint a guardian of the estate.

Appeal from the Supreme Court of the District of Columbia.

Petition by Charles J. Hardy, Jr., and wife, against Andrew J. Lehmer, to annul the appointment of the latter as guardian of the person of Ruth Lehmer, a minor. From a decree of annulment, said Lehmer appeals. Affirmed.

C. Clinton James and W. W. Millan, both of Washington, D. C., for appellant.

William Henry White, of Washington, D. C., for appellees.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. This is an appeal from a decree vacating and annulling the appointment of Andrew J. Lehmer as guardian of the person of Ruth Lehmer, a minor.

[1] On the 28th of January, 1922, Leroy L. Lehmer and Elizabeth M. Lehmer, killed by the collapse of the Knickerbocker Theater, left them surviving their daughter Ruth, 6 years of age. Ruth was the only heir at law of her parents and subject to administration she became entitled to her father's estate, consisting of money, stocks, bonds, and household effects valued at about $20,000.

On the 7th of February, 1922, Andrew J. Lehmer, paternal grandfather of Ruth, filed in the Supreme Court of the District of Columbia his petition to be appointed guardian of her person, and one day later

he, in the absence of the minor and without notice of any kind, was appointed guardian in accordance with the prayer of his petition. On the 16th of February, 1922, Andrew J. Lehmer filed in said court his petition to be appointed guardian of the estate of his granddaugther, and on the same day, in the absence of the minor and without notice, that petition was granted.

On the 21st day of February, 1922, Charles J. Hardy, Jr., and Helen E. Hardy, his wife, Ruth's maternal aunt, agreed in writing with the maternal grandparents of Ruth to adopt and care for said minor as their own lawful child and to assume all the responsibilities and duties which devolved on Ruth's parents prior to their death. In pursuance of that agreement Mr. and Mrs. Hardy, on the 21st of February, 1922, filed said agreement in the Surrogate's Court of New York County, N. Y., together with a petition praying for an order of said court allowing and confirming said adoption. The Surrogate's Court, without notice to Andrew J. Lehmer, allowed and confirmed the adoption of said minor by Charles J. Hardy, Jr., and Helen E. Hardy, his wife, and adjudged and decreed that henceforth Ruth Lehmer should be regarded and treated in all respects as their lawful child.

On the 24th day of May, 1922, Charles J. Hardy, Jr., and Helen E. Hardy, his wife, by leave of court, filed with the register of wills and the clerk of the probate court of the District of Columbia their petition praying that Andrew J. Lehmer be directed to show cause why the order appointing him guardian of the person of Ruth Lehmer should not be vacated, annulled, and set aside and praying that Andrew J. Lehmer, pending final decision of the matter, be restrained from interfering with the petitioners in the exercise of their custody and control of the minor.

The petition to vacate the appointment of a guardian of the person of the minor alleged that no notice was given of the filing or of the hearing of Andrew J. Lehmer's said petition and that Ruth was not present in court either at the time of the hearing of the petition or when the order appointing a guardian of her person was made. It was further alleged that on the 31st day of January, 1922, the minor with the consent and approval of said Andrew J. Lehmer was taken by Charles J. Hardy, Jr., and Helen E. Hardy, his wife, to the city of New York for the purpose of making her permanent home, residence, and domicile with them in said city; that the probate court of the District had no authority to appoint a guardian of the person of said minor, and that the order of said probate court was inadvertently made and should be set aside for lack of jurisdiction.

In answer to the petition to vacate Andrew J. Lehmer admitted that his appointment as guardian was made without notice, and that the minor immediately after the death of her parents was taken with his consent by Helen E. Hardy to the home of the maternal grandparents in the city of New York. The answer denied, however, that said minor was taken to New York with the intent or purpose of making her permanent home, residence, or domicile with the petitioners in said city, and averred that she was not in their lawful custody in the sense that Andrew J. Lehmer had either temporarily or permanently surrendered to them her custody.

It appears affirmatively from the petition and answer thereto that the appellees and the paternal and maternal grandparents of Ruth were, at the time of the death of Ruth's parents and during all of the proceedings had for her guardianship and adoption, residents of the state of New York. On the hearing of the motion to vacate and annul the order appointing a guardian, Helen E. Hardy testified that on receiving the news of the death of her sister, Ruth's mother, she, Mrs. Hardy, went to Washington, and there in the apartment of Ruth's parents, met Andrew J. Lehmer, who said to her, "What is to become of Ruth?" that Mrs. Hardy replied, "I love her, and would love to take her;" that Mr. Lehmer then said, "Oh! would you? that would be fine; would you adopt her?" that Mrs. Hardy answered, "Yes; I would be glad to adopt her;" and on the suggestion of Mr. Lehmer promised that Ruth should continue to bear the name of Lehmer.

The testimony of Mrs. Hardy was corroborated by five witnesses, who testified to statements made by Mr. Lehmer to the effect that he and his wife were getting old, and that it was best for Ruth to go with her favorite aunt, Mrs. Hardy, who was fond of her and should have her; that Mr. and Mrs. Hardy were well-to-do, and were very fond of Ruth; that it would be best for them to take her and "raise her"; that they would give her a good home, and that they were younger and better able, or as well able, as he was "to bring her up"; that he did not want the child weaned away from him, but was willing that the Hardys should "bring her up"; and that he had no doubt that she would be well cared for so long as the Hardys had no children of their own. Two of the five witnesses testified that Mr. Lehmer stated to them that he regarded it as most fortunate that Mr. and Mrs. Hardy were willing to take Ruth and to adopt her.

On his own behalf, and in support of his answer, Andrew J. Lehmer testified that he was a resident of Mt. Vernon, N. Y.; that nothing was ever said about adopting Ruth, and that he simply consented that Mr. and Mrs. Hardy should take her "right along home," to care for her and to live with them; that he had no objection to the Hardys taking Ruth temporarily, but that nothing was said about her adoption or concerning her permanent custody. On cross-examination Mr. Lehmer admitted that he knew that Ruth was to be raised in New York, and that he talked with the Hardys about taking her home with them and taking care of her.

On a stipulation entered into by counsel, and on the evidence submitted on the hearing of the issues made by the petition to vacate and the answer thereto, the court found the following facts: First, that Ruth Lehmer was not a resident or domiciled in the District of Columbia, but that she was a resident and domiciled in the state of New York, at the time the petition for guardianship of her person was filed, and at the time the order appointing such guardian was made; second, that no process was issued upon the petition of said Andrew J. Lehmer for his appointment as guardian of the person of said Ruth Lehmer, and that no process was served upon her, or upon her custodian; and that no notice was given to her, or to her custodian, of any such pro-

ceeding prior to the filing of the petition, or thereafter until the order appointing a guardian had been actually made. Upon the facts so found the court entered its decree, setting aside and annulling the order appointing Andrew J. Lehmer guardian of the person of said minor, and from that decree this appeal was taken.

[2] Ruth's father and mother resided and were domiciled in the District of Columbia at the time of their death, and at that time the District of Columbia was Ruth's residence and domicile, inasmuch as the residence or domicile of a minor is that of its parents during their lifetime. Upon the death of Ruth's parents, Andrew J. Lehmer, the paternal grandfather, became her natural guardian, and by virtue of the fact that he then stood in loco parentis he had the right to change or fix her residence and domicile. Darden v. Wyatt, 15 Ga. 414, 416; Churchhill v. Jackson, 132 Ga. 666, 667, 668, 64 S. E. 691, 49 L. R. A. (N. S.) 875, Ann. Cas. 1913E, 1203; Holyoke v. Haskins, 5 Pick. (Mass.) 20 at page 26, 16 Am. Dec. 372; Kirkland v. Whately, 4 Allen (Mass.) 462; In re Benton, 92 Iowa, 202, 60 N. W. 614, 54 Am. St. Rep. 546; Lamar v. Micou, 112 U. S. 452, 470, 471, 5 Sup. Ct. 221, 28 L. Ed. 751; Lamar v. Micou, 114 U. S. 218, 222, 223, 5 Sup. Ct. 857, 29 L. Ed. 94.

Admittedly he consented that she might be taken by the Hardys to New York, there to be cared for, there to be "raised" or brought up by them, and there to make her home with them. Andrew J. Lehmer was himself a resident of the state of New York, and even from the point of view sustained by some of the authorities, that a minor takes the residence and domicile of its natural guardian on the death of its parents, Ruth Lehmer was a resident of the state of New York and domiciled therein at the time the petition for the appointment of a guardian of her person was filed, and at the time the appointment was made.

The minor not only resided and was domiciled beyond the limits of the District, but was actually in New York during all of the proceedings had for the guardianship of her person. No process was issued to bring her before the court. She was not present at the hearing of the petition. No notice whatever of a judicial proceeding which might vitally affect her welfare was given, either to her or to those who had her in their lawful custody. To hold under such circumstances that the courts of the District of Columbia had jurisdiction to determine the right to her custody would simply mean that the custody of infants may be awarded and their future in large measure determined in their absence, without notice or process of any kind to them or their lawful custodians, and notwithstanding the fact that they reside and are domiciled within the territorial limits of another and wholly independent judicial jurisdiction.

We are not willing to go that far, inasmuch as we are well satisfied that it was not the legislative purpose of section 150 of the Code to give to the courts of the District carte blanche to appoint guardians of the persons of infants during their absence without notice and regardless of their residence or domicile. Indeed, if the statute had attempted to confer any such authority, it might be argued with considerable force that such a law was of no effect, inasmuch as it not only

invaded the rights of the states, but swept away the safeguards which protect the adult, and which should be carefully preserved to protect minors, who are the wards of the court and the special care of the state in which they reside and are domiciled. See Galpin v. Page, 18 Wall. 368, 369, 21 L. Ed. 959.

[3] Let that be as it may, however, we are quite convinced that the courts of the District of Columbia have no authority to appoint guardians of the persons of infants who do not reside and are not domiciled within their territorial jurisdiction. A minor, like any other person, is entitled to the protection of the laws of the state or territory in which he abides, and it seems to be well settled that only the courts of the domicile have jurisdiction to appoint a guardian of the person of a minor. Wharton on Conflict of Laws, § 259; Harding v. Weld, 128 Mass. 590, 591; In re Benton, 92 Iowa, 202, 60 N. W. 614, 54 Am. St. Rep. 546; In the Matter of Hubbard, 82 N. Y. 90; Lamar v. Micou, 112 U. S. 470, 5 Sup. Ct. 221, 28 L. Ed. 751. In fact it was expressly held by Mr. Justice Field in Galpin v. Page, supra, 18 Wall. 367, 21 L. Ed. 959, that:

"The tribunals of one state have no jurisdiction over the persons of other states unless found within their territorial limits; they cannot extend their process into other states, and any attempt of the kind would be treated in every other forum as an act of usurpation without any binding efficacy."

[4, 5] As the domicile determines the court which has jurisdiction to appoint a guardian of the person, so the location or situs of any property of the ward determines the court which has jurisdiction to appoint a guardian of the estate. The law applicable to the person determines the jurisdiction in the one case, and the law applicable to the estate determines it for the other. It may be that the court having jurisdiction of the estate of a minor may find it convenient and to the best interest of the ward to appoint as guardian of such estate the guardian of the person appointed by the judicial tribunals of another territorial jurisdiction, but if it does, it is in a position to protect the interests of the minor by applying the laws of the place in which the property is situated.

The appointment of guardians of the persons of minors without regard to domicile or residence, or the appointment of guardians of their estate without regard to the place in which the minor's property is located, would result in conflicts of authority, endless litigation, and a lack of co-operation certain to prove detrimental to the best interest of the ward. Lacy v. Williams, 27 Mo. 280, 282. Such a result as that can only be avoided by appointing a guardian of the person in accordance with the laws of the place in which the minor resides or is domiciled, and a guardian of the estate in accordance with the laws of the place in which the property is found.

As Ruth Lehmer did not reside and was not domiciled in the District of Columbia, we are constrained to hold that the courts of that jurisdiction were not vested with authority to appoint a guardian of her person. The findings of fact by the court below were fully justified by the evidence and warranted the decree.

The decree appealed from is therefore affirmed, with costs.