**FORE, a Minor, Petition, In re.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24536. Decided July 10, 1958.

**16**

McAfee, Grossman, Taplin, Hanning, Newcomer & Hazlett, Maurice F. Hanning, J. King Rosendale, of Counsel, for relator.

Charles C. Redmond, for respondent.

## OPINION

By SKEEL, PJ.

This is an action invoking the original jurisdiction of the court wherein a petition has been filed seeking a writ of Habeas Corpus for the immediate release of Donald Peter Fore to the custody of the relator. The facts are not in serious dispute. The relator is the paternal grandmother of Donald Peter Fore, a minor of three years of age. She is a resident of Winnsboro, Louisiana. She is seventy-seven years of age. The respondent is now, and has been since her marriage to William Toth in 1954, a resident of Cleveland. She is a citizen of Germany and has not yet petitioned for United States citizenship. Donald Peter Fore is the son of Donnie Ray Fore and Franziska Anna Fore, now deceased, both parents having died in a common accident in Ingrandes, France, September 7, 1957. The respondent is the sister of Franziska Anna Fore.

Donnie Ray Fore was born in Winnsboro, Louisiana, December 19, 1922. He enlisted in the Army of the United States on July 8, 1941, and was continuously in the Military Service from that time until his death. His last enlistment was on May 3, 1956. The place of this enlistment, as indicated by the military records, was Ingrandes, France, where he was then stationed. In this enlistment, as in all previous enlistments, he gave his home address as Winnsboro, Louisiana. Donnie Ray Fore during his military service, attained the rank of Master Sergeant and at the time of his death on September 7, 1957, was serving in the Quartermaster's Depot, Ingrandes, France. Sergeant Donnie Ray Fore was married in Goeggingen, Germany, August 6, 1952. Donald Peter Fore was born in the Military Hospital at Fort Lee, Virginia, on October 10, 1954.

Immediately after the death of Sergeant Donnie Ray Fore and his wife, Donald Peter Fore was cared for by the family of Master Sergeant Gross until October 24, 1957, when the respondent, who had flown to Germany after receiving notice of her sister's death on September 14, 1957 (notice having been received from Mrs. W. C. Lee, sister of Donnie Ray Fore, who lived in Louisville, Mississippi), took possession of the child from an army officer. The respondent was then at the home of her parents in Germany.

After the respondent obtained possession of the infant, Donald Peter Fore, from the army representative, she brought him to the United States on November 18, 1957. Upon arrival in New York, she was served with a petition seeking a writ of Habeas Corpus for the release of the infant. This proceeding was instituted there by Ida Fore Tillery, a resident of Mississippi and who was a paternal aunt of Donald Peter Fore. The record shows that the writ was denied on November 25, 1957.

The respondent then brought Donald Peter Fore to Cleveland, Ohio, where he has since been maintained in her household.

On December 2, 1957, the respondent filed an application for letters of guardianship, alleging that the parents of Donald Peter Fore, aged three, October 10, 1957, residing at 9006 Laisy Avenue, Cleveland, Ohio, were deceased, and naming the maternal grandparents in Germany and this relator, Ella Fore, paternal grandparent, residing in Louisiana, as next of kin. The application shows that the applicant (respondent here) is the maternal aunt and that the minor's property consists of government insurance on the life of the deceased father. This application was granted forthwith without notice to anyone and letters of guardianship issued upon posting a bond in the sum of $4,000. The probate file discloses a letter from a lawyer in Germany, employed by respondent to assist her in getting possession of the child, advising immediate action in securing an order of guardianship in the Probate Court of the respondent's residence, which letter included a copy of the journal of the Supreme Court of New York, County of Queens, dismissing the application for a writ of Habeas Corpus.

On April 11, 1958, the relator filed a petition in the Fifth District Court, Parish of Franklin, Louisiana, seeking an order of "tutorship" of the person of Donald Peter Fore and the right to the effects of said minor under the Law of Louisiana. The petition sets out that Ella Vernon Fore (relator herein) is a resident of the Parish of Franklin, State of Louisiana; that she is the mother of Donald (Donnie) Ray Fore, the father of the minor here concerned; that the father and mother of said minor died in a common accident in France where the father was serving as a member of the Army of the United States; that he had been a member of the Armed Forces of the United States since 1941; that his home and domicile when he entered the Armed Services was the Parish of Franklin, Louisiana, where it has remained ever since and until his death, and that the domicile of the minor continued after the death of his parents in the Parish of Franklin and State of Louisiana.

Some reference in this petition is made to the fact that after being consulted by the Army concerning the child after the death of its parents, she consented to an application being made by Ida Fore Tillery, a sister of the deceased, Donald Ray Fore, to seek guardianship of such minor, which application was filed October 18, 1957, in the Fourth Chancery District Court of Mississippi, and decree entered by that court appointing Ida Fore Tillery Guardian. It is also set out in said petition that on October 25, 1957, the United States Army wrongfully delivered physical possession of Donald Peter Fore to the respondent who was then in Germany and that she brought said infant to Cleveland, Ohio, where she now has physical possession of such child and wrongfully refuses to deliver the child to the petitioner.

Upon hearing of the relator's petition for "tutorship" on April 11, 1958, the court appointed Ella Vernon Fore, guardian of said minor, Donald Peter Fore, as is shown by the record of such proceedings introduced in evidence in this case.

From the evidence, there can be no question but that the domicile

of Donnie Ray Fore was Winnsboro, Parish of Franklin, Louisiana, during his entire life. This was his domicile when he enlisted in the United States Army and there is no evidence that he, at any time during his sixteen years of service prior to his death, ever signified an intent to change such domicile.

In Vol. 18, page 171, Sec. 17, O. Jur. 2d, under the title "Domicile," it is said:

"* * * Absence from home for years, where at the time of leaving there was an intention to return, does not, unless in the meanwhile that intention was destroyed by some unequivocal act signifying a purpose to change the domicile, defeat one's right to claim his former residence as if it had never been interrupted by his absence. On no other principle could there be secured to officers in the Army and Navy on duty, public officials abroad and travelers in foreign parts, the right to enjoy on their return the privilege of voting where they had always resided or to claim the protection of their property from unlawful seizure in their absence. * * *"

In the case of **Glassman v. Glassman, 75 Oh Ap 47, 60 N. E. 2d 716,** the court said in the second paragraph of the syllabus:

"2. The domicile of a person entering the armed forces of the United States remains the same throughout service in such forces unless a new domicile is voluntarily selected by such person."

On the facts of the case just cited, the rule set forth in paragraph four of the syllabus is not applicable here. The general rule is that where the husband has a fixed domicile, recognized as such, the wife's domicile is that of her husband.

The facts are very clear that the respondent set out while still in Germany to keep Donald Peter Fore as her child regardless of the wishes of other members of the family, even as to those who under the law of the state of the child's domicile would have a prior right to such protective custody. The child's domicile was unquestionably in the Parish of Franklin, Louisiana, U. S. A., at the time of and since the death of his parents which occurred in a common accident while his father was in the Armed Services. This is true for two reasons, first because a minor's domicile is that of his father and second because courts hold that an infant takes the domicile of his paternal grandparents upon the death of both parents. See Lehmer v. Hardy, et al., 294 Fed. 407.

The claim that the court is acting on behalf of the State of Ohio as "parens patriae" under which theory mere residence of the child within the state would suffice to give the judge jurisdiction to adjudicate what is for the best interests of the child is not applicable here. The respondent brought the child here seeking the protection of this state in her attempt to keep the exclusive custody of the child for her own purposes. There has been as yet no contest as to what is for the best interests of the child, nor could such question be litigated in this state on the undisputed facts here presented Does the respondent suggest that the state of the child's domicile, Louisiana, is incapable of seeing to its welfare? Does the respondent seek, should disaster again strike, to burden this state with the continued care of the child or would she

then attempt to surrender his custody to the sate of his domicile? The suggestion that the relator, being seventy-seven years of age, is incapable of caring for the child, is not supported by the record in this case. The facts are that Ella Fore has raised nine children and one grandchild, some of whom have had very acceptable army careers.

In 4 A. L. R. 2d, beginning at page 7, is an annotation to the case of Wicks v. Cox, 208 S. W. 2d 876. On page 14, in dealing directly with the question here presented, it is said:

"Another theory which guides the courts' thinking is that a custody award affects the status of the child—a permanent relationship, jurisdiction over which is in the court of the state of the child's domicil, and in that court only. Courts for support of this theory often cite and quote 2 Beale, Conflict of Laws, para. 144.3, where it is said: 'Since custody of a child by one parent carries with it domicil and a domestic status, jurisdiction to give the child to one parent or the other depends in principle on the domicil of the child; and a state which is the temporary residence of the child, not the domicil, cannot confer the right to custody. A fortiori a decree for custody rendered in a state where the child is neither resident nor domiciled is void for lack of jurisdiction.' This view is supported in the American Law Institute, Restatement, Conflict of Laws, para. 117 and 145-148. Theoretically, it would seem that the court of the child's domicil should have power to determine its custody, since that sovereign is especially interested in the child's welfare. 24 Harv. L. Rev. 142."

In the case here being considered, it must be remembered that the controversy is not between parents. As is indicated in the annotation just cited, many times in disputes between husband and wife or in protecting an abandoned child, residence is sufficient to vest a court with jurisdiction. The legal right to the custody or the responsibility for the support and care of Donald Peter Fore as between the remaining members of his family has never been the subject of an action before a court of competent jurisdiction. The respondent just took the child without legal right or authority and with total indifference to all others equally entitled or with prior right to be considered in a proper action to be adjudged the guardian of such minor child.

The statute of Ohio authorizing the appointment of guardians is §2111.02 R. C. This section circumscribes the authority of the courts of this state in making such appointment to cases where the ward is "a resident of the county or has a legal settlement therein." There is no claim here that Donald Peter Fore had a "legal settlement" in Cuyahoga County nor do the facts justify a determination that he was, when the action was commenced, a resident of this state. The respondent had no authority to establish a residence here for such minor. In the case entitled In the Matter of the Petition for the Appointment of a General Guardian of Maude and Mabel Hubbard, Infants, 82 N. Y. 90, the court said in the headnotes:

"The Supreme Court has no jurisdiction to appoint a guardian for an infant where the infant is not within the jurisdiction, or domiciled there, and has no property therein.

"It seems, that if an infant is a resident within the jurisdiction, although not domiciled and having no property there, the court has power to appoint a guardian; so, also, property gives jurisdiction to appoint a guardian thereof, although the infant is out of the jurisdiction and a resident abroad.

"The bringing of an infant, however, into this State by stratagem for the purpose of giving jurisdiction, will not avail.

"On application for the appointment of a guardian for two infants, it appeared that the legal domicile of their father was in Rhode Island. One of them was, at the time of the application, in that State, and the other had been, a few days prior to that time, secretly taken without the knowledge of her father or her relatives from Rhode Island, and brought into this State for the purpose of bringing her within the jurisdiction of the court, and in aid of the proceedings. Neither of the infants had any property in this State. The Special Term appointed a guardian residing in this State; the General Term, on appeal, reversed the order and appointed a resident of Rhode Island as guardian. Held, that both appointments were erroneous; that the legal domicile of the infants was in Rhode Island, as the domicile of the father was the domicile of his infant children; and that the Supreme Court had no jurisdiction."

And in the case of Lehmer v. Hardy, et al., 294 Fed. 407, it is said in the headnotes:

"1. Where the maternal and the paternal grandparents of a minor, whose parents had been killed, resided in New York, a decree of the Supreme Court of the District of Columbia purporting, under Code D. C. §150, to appoint a guardian of such minor's person rendered in her absence without notice, held void, though the District of Columbia had been the domicile of her parents.

"2. Upon the death of a minor's parents, the paternal grandfather becomes her natural guardian, and by virtue of the fact that he then stands in loco parentis he has the right to change or fix the minor's domicile

"3. A minor, like any other person, is entitled to the protection of the laws of the state or territory in which he abides."

and on page 411, the court said:

"3. Let that be as it may, however, we are quite convinced that the courts of the District of Columbia have no authority to appoint guardians of the persons of infants who do not reside and are not domiciled within their territorial jurisdiction A minor, like any other person, is entitled to the protection of the laws of the state or territory in which he abides, and it seems to be well-settled that only the courts of the domicile have jurisdiction to appoint a guardian of the person of a minor. Wharton on Conflict of Laws, 259; Harding v. Weld, 128 Mass. 590, 591; In re Benton, 92 Iowa, 202, 60 N. W. 614, 54 Am. St. Rep. 546; In the Matter of Hubbard, 82 N. Y. 90; Lamar v. Micou, 112 U. S. 470, 5 Sup. Ct. 221. 28 L. Ed. 751."

In the case of Shorter v. Williams, 74 Ga. 539, the syllabus provides:

"Where application was made for the guardianship of certain minors in the county where their father had lived and died, and where they

were then domiciled, the court of ordinary thereby acquired jurisdiction to hear, determine and grant letters of guardianship for their persons and property; and this jurisdiction could not be divested or rendered nugatory by the removal of the minors to the state of Alabama by their sister, and the grant of letters of guardianship to another by the probate court of that state, pending the application in Georgia."

See also Munday v. Baldwin, 79 Ky. 121.

The many cases on this subject, while not based on identical facts as are here presented, hold under similar circumstances that the domicile of an infant is that of its parents; that upon the death of both parents, the paternal grandfather, or if not living the paternal grandmother, becomes the natural guardian of a minor child; that such natural guardian has the power on the death of both parents to change the domicile of a minor grandchild to that of his own, and a court of another jurisdiction has no power to oust the prior right of the court of the domicile of the infant thus situated from determining what is for the child's best interest and appointing a fiduciary of the infant's person and estate. Nor can the court of another jurisdiction take away the right of the paternal grandparent who, upon the death of both parents, stands in loco parentis to such child.

Here both parents were killed in a common accident in France only a very short time before the proceedings herein were commenced. The respondent got possession of the infant in Germany from an army officer. She is a maternal aunt. There are also two paternal aunts of equal standing in the United States, one being the relator in the unsuccessful proceeding in Habeas Corpus filed in New York when the child arrived in this country in the possession of the respondent, and who had an order of guardianship for the minor issued in a proceeding in the courts of Mississippi prior to the New York case. The dismissal of the petition for a writ of habeas corpus in the New York case (although the record is silent on the question) could have been for the same reason that the respondent should not prevail here. That is, the authority depended on as the basis for seeking custody was not from the state of the child's domicile. The person nearest in consanguinity in the United States is the relator in this action. She is the paternal grandmother and a resident of, and holds a decree granting her the right of "Tutorship" of the child from the courts of the Parish and State of his domicile. Such court is the only judicial tribunal authorized to determine, under the facts in this case, the right of the custody of Donald Peter Fore.

From the foregoing facts, it is clear that the custodial order of the Probate Court of Cuyahoga County dependent on by the respondent was void when made for want of jurisdiction of the cause of action and of no legal effect and the writ here prayed for should issue.

KOVACHY, J, concurs.
HURD, J, dissents.

## DISSENTING OPINION

By HURD, J.

I respectfully dissent from the judgment and opinion of my esteemed

colleagues because, in my opinion, the judgment rendered deprives the Probate Court of its exclusive jurisdiction in the appointment of guardians.

The petition for a writ of habeas corpus should be dismissed because:

(1) Petitioner is in the wrong forum, having an adequate remedy at law by the commencement of proper proceedings in Probate Court.

(2) This proceeding is a collateral attack upon the jurisdiction of the Probate Court.

(3) The appointment of the respondent, as guardian, was a proper exercise of jurisdiction by the Probate Court, there being no other guardianship proceedings outstanding in any other court of record, the respondent at the time of her appointment being a resident of this county and standing in the relationship of loco parentis, both factually and legally, to said minor child under an order of the Supreme Court of New York and by virtue of the statutes of Ohio.

(4) The order of guardianship having been lawfully made and the jurisdiction of Probate Court being plenary, exclusive and binding on all the world, the petitioner herein should seek her remedies in that court.

An examination of the soundness of the foregoing propositions requires a restatement of facts, some of which are not contained in the majority opinion, and an examination of the applicable principles of law.

Donald Peter Fore, the minor, was orphaned and made homeless by the tragic death of his parents, Master Sergeant Donnie Ray Fore, and his wife, Franziska Anna Fore, both of whom died as a result of an automobile accident. At the time of the accident Master Sergeant Fore, who was on duty with the United States Army, stationed at Ingrandes, France, was en route from his home to the United States Army Hospital in Chinon, France, where he was taking his wife for delivery of their second child. Sergeant Fore met death instantly but his wife, Franziska, survived him for a period of about five hours without regaining consciousness. The expected child was stillborn and both the mother and the child were buried at her parents' home in Goeggingen, Germany.

The respondent, Mrs. Jacobine Toth, is a sister of the deceased, Franziska Fore, and the maternal aunt of the minor. Upon being notified of the death of the minor's parents, the respondent made a trip by airplane to attend the funeral of her sister in Germany. After the funeral services, she sought the custody of the minor child and after some delay, while at her parents' home in Germany, the child was delivered to her for return to the United States by order of the Department of the Army in France. This transfer was not accomplished until the Department of the Army had previously made an investigation of the conditions of the home of respondent in Cleveland, Ohio, by and through the American Red Cross which forwarded to its overseas field office a report favorable to the respondent in all respects.

The petitioner, the paternal grandmother of the minor, is a widow seventy-seven years of age who lives alone in her residence in Winnsboro, Louisiana, and who, according to testimony in the record, is suffering from rheumatism and high blood pressure.

The record shows that the respondent is a married woman, aged

thirty-three, who lives with her husband, William Toth, aged thirty-five, at 9006 Laisy Avenue, in the City of Cleveland, together with their minor child, aged twenty-two months, and Donald Peter Fore, now aged three and one-half years. After the child was delivered into her custody by the Department of the Army in France, the respondent embarked with the child by airplane for the United States. Upon arrival in New York on Sunday, the 19th of October, 1957, she was served with a summons for a writ of habeas corpus upon the petition of one, Ida Fore Tillery, aged approximately fifty years, an elder sister of Sergeant Donnie Ray Fore, who had been appointed guardian of the child on the 18th day of October, 1957, by the Court of Chancery of Amite County, Mississippi, with the consent and approval of the petitioner herein.

Upon hearing at a Special Term, Part One, of the Supreme Court of the State of New York, held in and for the County of Queens, at the Queens General Court House, the Honorable Nicholas Pette, Justice, ordered that the said writ be dismissed and made an entry as follows:

"Ordered that the custody of Donald Peter Fore, the child for whose production the said Writ was issued, be and hereby is granted to Jacobine Toth, * * * the maternal aunt of said infant."

Thereafter, the respondent proceeded with the child to her home in Cleveland, Ohio, where she has cared for him continuously since that time. Thereafter, respondent made application to the Probate Court of Cuyahoga County for letters of guardianship, naming both the maternal grandparents residing in Germany and the paternal grandmother residing in Louisiana in said application, and upon appointment as guardian of the person and estate of said minor, December 2, 1957, qualified by giving bond in the sum of $4,000 as ordered by said court.

Thus the record clearly shows that the respondent has had actual custody of the child since October 24, 1957, first, through the order of the Department of the Army of the United States in France, secondly, through the order of the Supreme Court of the State of New York and thirdly, through the letters of guardianship issued by the Probate Court of this county.

The petitioner commenced this action on April 21, 1958, based on letters of tutorship issued to her by the Fifth District Court of the Parish of Franklin, State of Louisiana, on the 11th day of April, 1958, something over four months after the letters of guardianship were issued by the Probate Court of this county.

The petition herein is predicated upon the technical legal fiction of the common law that because the father of the minor child was born in Winnsboro, Louisiana, and resided there until he entered the Army at the age of nineteen years, he was at the time of his death domiciled in the State of Louisiana; that, therefore, the child is domiciled in Louisiana and the paternal grandmother is now entitled, as a matter of right, to guardianship of the child.

There are many facts and circumstances shown in the evidence which negative the contention of the petitioner that Sergeant Fore was, at the time of his death, domiciled in Louisiana. One fact is that when Sergeant Fore was stationed at Camp Polk, he established a residence in Colonial Heights, Virginia, and lived there with his wife for a period

of approximately three years until he was ordered overseas to join the Department of the Army in France. At the time of his departure, he stored his furniture and at the time this hearing was had, the furniture was still stored there. The evidence in the record shows that whenever the question of future residence was discussed, Sergeant Fore expressed the intention, upon his release from the Army, to make his home in Virginia. This intention he expressed a number of times. He was serving his fifth enlistment at the time of his death and during this period stated a number of times that he did not want to go back to Louisiana upon the termination of his military career because he did not like the life he had lived there, and definitely stated that he did not want to live in Louisiana. It is also a fact that the mother of the child survived the father by some five hours and that she was never actually domiciled in Louisiana and that the child, whose guardianship is sought by the petitioner, never resided in Louisiana. Thus, if it should be conceded, arguendo, that the domicile of the father would be a controlling factor, the evidence fails to demonstrate clearly that Louisiana was, in fact, the domicile of the father at the time of his death in France.

However, the principal question presented for determination is whether the Probate Court of this county had jurisdiction to appoint the respondent the guardian of the minor child when it issued letters of guardianship on December 2, 1957. For it must be conceded that if the Probate Court acted within its jurisdiction, its appointment of a guardian for the minor child "binds all the world," and that this court is without jurisdiction to entertain this proceeding in habeas corpus or to grant the writ.

It appears from the record that the child is now and has been a resident of Cleveland, Ohio, in the home of the respondent guardian since leaving New York City after the Supreme Court of New York denied the writ of habeas corpus instituted by Ida Fore Tillery and granted respondent custody of the said child in November, 1957.

While the Department of the Army was without authority to determine questions of guardianship or permanent custody, it is certain that it took a proper course of action after extensive investigation through the American Red Cross when it placed the child in the temporary custody of the respondent, the only next of kin from the United States present at the time, for the purpose of transporting the child to the United States. Therefore, the action of the Department of the Army in so doing cannot be deemed unlawful. However, be that as it may, it is certain that the Supreme Court of New York, by its order denying the application for a writ of habeas corpus to Ida Fore Tillery in the action instituted by her and by granting the custody of the child to the respondent, placed the respondent, factually and legally, in loco parentis to the child. It was necessary that such an order be made because the child at that time was a dependent child of tender years within the jurisdiction of the Supreme Court of New York, who needed a home, plus care comfort and sustenance. Consequently, the order there made, with all proper parties before it, was within the orbit of its jurisdiction.

The law in respect to the jurisdiction of the Probate Court in the

appointment of guardians has been well defined and delineated by many authoritative decisions, a number of which are directly applicable to the facts of the instant case.

In **Shroyer v. Richmond, 16 Oh St 455,** decided by the Supreme Court in the December Term of 1866, it was held that plenary and exclusive original jurisdiction is given to the Probate Courts of this state in the matter of the appointment of guardians; that such proceedings are not "inter partes" or adversary in character; that they are properly proceedings in rem; and the appointment made in the exercise of jurisdiction binds al¹ the world; that Probate Courts of this state are courts of record belonging to that class whose records import absolute verity and that they are competent to decide upon their own jurisdiction; that an order of a probate court appointing a guardian in the exercise of its jurisdiction cannot be collateraly attacked and that the record, showing nothing to the contrary, it will be conclusively presumed in all collateral proceedings that such order was made upon full proof of all the facts necessary to authorize it. (See paragraphs three, four, five and six of the syllabus.)

In the later case of **In re Clendenning, 145 Oh St 82, 60 N. E 2d 676,** April 11, 1945, the Supreme Court approved and followed the principles set forth in the Shroyer case. Thereafter, in **Weigel v. Grosenickle, 100 Oh Ap 106, 135 N. E. 2d 894,** decided May 22, 1954 a case factually analogous in many respects to the instant case, the Court of Appeals for the First District, sitting in Clermont County based its decision on the Clendenning case.

The court had before it for decision an appeal from a refusal by the Court of Common Pleas to grant a writ of habeas corpus. In that case, the children were completely orphaned by the death of their surviving parent. It was stipulated that a paternal grandmother, residing outside the State of Ohio, and two aunts, residents of Hamilton County, Ohio, one being the appellant therein, appeared before the Probate Court of Clermont County and asked for custody of the children and were refused, prior to the appointment of the co-guardians therein. It was contended there that upon the death of the surviving parent the domicile of the minors became that of the nearest blood relative willing to stand in loco parentis to the children so as to deprive the Probate Court of jurisdiction to appoint a guardian. In the alternative, it was contended by the appellant that if the court had jurisdiction to make the appointment as co-guardian, she was entitled to the custody of the children so that the invoking of the jurisdiction of the Court of Common Pleas in habeas corpus had for its object a change of custody originally fixed by the Probate Court. The Court of Appeals declared at page 107 that **"in either event petitioner is in the wrong forum,"** and held that the principles decisive of the appeal were those set forth in In Re Clendenning, supra. (Emphasis added.) The syllabus of the case provides:

"Once a Probate Court properly appoints a guardian for a minor, exclusive, continuing jurisdiction upon matters of custody remain in that court, even though the minor has his domicile in some other county or state." (Emphasis added.)

The ratio decidendi of the court, as set forth at page 107, et seq., has, we believe, equal application to the facts of the instant case. After

citing and quoting §2111.02 R. C., concerning the appointment of a guardian of the person, the estate or both, of a minor, the court cited Langan v. Kessinger, 23 Abs 392 (Oh Ap), saying that it was there squarely held that "a guardian may be appointed in Ohio even though the minor has his domicile in some other county or state. under the provisions of §10507-2 GC (§2111.02 R. C.)." (Emphasis added.)

The court then proceeded in its discussions as follows:

"The principles decisive of this appeal are set forth, in part, in **In re Clendenning, 145 Oh St 82, 60 N. E. 2d 676:**

"'Plenary and exclusive, original jurisdiction is given by law to the Probate Courts of this state in the matter of the appointment and removal of guardians. **(Shroyer, Gdn. v. Richmond, 16 Oh St 455,** approved and followed.)

"'2. A guardianship proceeding is a proceeding in rem and the exercise of jurisdiction by a Probate Court binds all the world (Ibid.)

"'3. An order appointing a guardian made by a Probate Court in the exercise of its jurisdiction cannot be impeached collaterally. (Ibid.)

"'4. Where petitioner has an adequate remedy at law a writ of habeas corpus should be denied. **(Ex parte Justes, 121 Oh St 628,** approved and followed.)'

"And, in the opinion, at page 92, it is stated:

"'As stated in 39 Corpus Juris Secundum, 14, Sec. 4:

"'A guardian appointed by a court of competent jurisdiction is always under the court's control and is subject to its directions and supervision. This is so even though the guardian was nominated by the ward. The jurisdiction of the court in this respect is exclusive and a continuing one.'

"'In 25 American Jurisprudence, 7, Section 2, it is said:

"'The court having jurisdiction of a guardianship matter is said to be the superior guardian, while the guardian himself is deemed to be an officer of the court.'"

"It, therefore, appears that exclusive, continuing jurisdiction upon matters of custody rested in the **Probate Court,** and the **appellant has an adequate remedy at law in that forum,** so that the **petition in habeas corpus was properly dismissed,** and the judgment of the lower court is affirmed." (Emphasis added.)

We think that the principles of law declared by the Supreme Court in the Shroyer and Clendenning cases, supra, and the rationale of the unanimous decision of the Court of Appeals of the First District in Weigel v. Grossnickle, supra, are decisive of the issues in this case and require this court to dismiss the habeas corpus proceeding because here, as in the Weigel case, the habeas corpus proceeding has for its object, change of custody originally fixed by Probate Court.

While it is not necessary to look outside of Ohio for authorities on the jurisdiction of a court of record to appoint a guardian of the person of a child resident in a state, it may be noted that in 4 A. L. R. 2d at page 16, there is the following pronouncement:

"Where there is no outstanding judicial award of custody by a foreign court the courts are nearly unanimous in holding that **even though the**

children may be domiciled without the state, power in the court exists to make an award of custody of children present in the state in furtherance of the welfare of the children." (Emphasis added.) (Citing numerous authoritative decisions of other jurisdictions.)

And on the same page, second column, it is stated:

"According to this view, technical legal domicil of a child within the state is not a sine qua non of child custody jurisdiction on the part of the court." (Citing and discussing numerous cases of guardians.)

To the same effect, see also Finlay v. Finlay, 240 N. Y. 429, 148 N. E. 624. where it was held in an opinion by Cardozo, J., that:

"The jurisdiction of a State to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless. For this, the residence of the child suffices though the domicile be elsewhere."

In the instant case, there was no outstanding judicial award of custody by a foreign court at the time the letters of guardianship were issued by the Probate Court of Cuyahoga County. The letters of guardianship issued to Ida Fore Tillery by the Probate Court of Amite County, Mississippi, were adjudicated in the habeas corpus proceeding instituted by said Ida Fore Tillery in the Supreme Court of New York and no appeal was prosecuted from the judgment of that court.

It is important to note also that the petitioner in the instant case consented to the appointment of Ida Fore Tillery in the Mississippi Court and that the letters of guardianship issued in Mississippi were later abandoned by reason of the application of the petitioner herein for letters of tutorship in Louisiana a considerable time after the judgment of the Probate Court here was entered appointing the respondent guardian.

Turning now to the statutory law of the State of Ohio in respect to the appointment of guardians, §2111.02 R. C., insofar as is applicable reads as follows:

"When found necessary, the Probate Court on its own motion or an application by any interested party shall appoint a guardian of the person, the estate, or both, of a minor. * * * provided the person for whom the guardian is to be appointed is a resident of the county or has a legal settlement therein."

Under this section, the court has jurisdiction to appoint a guardian provided the person for whom the appointment was made is a resident of the county or has legal settlement therein. We have heretofore stated that at the time of the application for appointment, the facts showed that the minor was a resident of this county, having a legal settlement therein, living with the respondent herein who was granted custody by the Supreme Court of New York.

Sec. 2151.06 R. C., reads as follows:

"Under §§2151.01 to 2151.54, inclusive, R. C., a child has the same residence or legal settlement as his parents, legal guardian of his person, or his custodian who stands in the relation of loco parentis." (Emphasis added.)

This section has application to the facts of the instant case because under §2151.04 R. C., the child involved was a dependent child and the respondent herein, at the time of her appointment as guardian by the Probate Court, stood in the relation of loco parentis to said child, which relationship has continued up to the present time.

It is true that this provision of the Code forms part of what is known as the Juvenile Court Act. The petitioner raises objection on the ground that this section relates only to Juvenile Court and has no application in guardianship proceedings in Probate Court. This objection of the petitioner cannot be successfully maintained because, as has been heretofore pointed out, plenary and exclusive original jurisdiction is given to the Probate Courts of this state in the matter of the appointment of guardians. Shroyer v Richmond and In re Clendenning, supra. Obviously, the Juvenile Court is not vested with jurisdiction to appoint guardians. That jurisdiction resides exclusively with the Probate Court. It should be observed that §2111.02 R. C., in respect of the appointment of guardians, is general in character and is applicable to the appointment of guardians of all classes of persons, whereas §2151.06 R. C., a part of the Juvenile Court Act, has application to minors only and, consequently, has application to the appointment of a guardian for the dependent child in this case.

In the case at bar, the minor was made a dependent child by the tragic death of his parents. The definition of dependent child set forth in §2151.04, sub-section A, R. C., is one "who is homeless or destitute or without proper care or support through no fault of his parents * * *." Here death of both parents wrote the final chapter and created an emergency which brought the child within the provisions of the statute. The legislature has determined by the provisions of §2151.06 R. C., that dependent children are entitled to guardianship and that the child has the same residence and legal settlement as his "custodian who stands in the relation of loco parentis." (Emphasis added.) It follows perforce as a matter of fact and of law that the respondent stood in the position of loco parentis to said child at the time of her appointment as guardian by Probate Court, and that the child's residence and legal settlement was at the time of the appointment, in Cuyahoga County, and that the Probate Court acted properly and within its jurisdiction in appointing a guardian for said child in this jurisdiction.

It must be concluded that the Probate Court, under the provisions of §§2111.02 and 2151.06 R. C., properly exercised its jurisdiction in its appointment of a guardian of the person and estate of the minor and, therefore, the Probate Court is the proper forum in which to present the issues in this habeas corpus proceeding.

From this we must conclude, as was concluded by the Court of Appeals of the First District in the Weigel case, supra, that exclusive, continuing jurisdiction on matters of custody resides in the Probate Court of this county and that the petitioner herein has an adequate remedy at law in Probate Court, so that the petition in habeas corpus, filed as an original action in this court, should be dismissed. In the Clendenning case, supra, the court held, as appears by paragraph five of the syllabus, as follows:

"5. Sec. 10507-61 GC (§2111.47 R. C.), provides an adequate remedy for the removal of a guardian and the exclusive method for the exercise of original jurisdiction in such a proceeding."

Sec. 10507-61 GC, now §2111.47 R. C., applied to wards other than minors. The present statute applying to guardianship of minors is §2111.46 R. C., and in substance contains the same remedies for the removal of guardians as are contained in §2111.47 R. C., which applies to other than minors. Therefore, it follows that §2111.46 R. C., provides an adequate remedy to the petitioner and is the exclusive method afforded petitioner rather than by a proceeding in habeas corpus in this court.

For the foregoing reasons, the petition for habeas corpus, filed as an original action in this court, should be dismissed on the ground as heretofore stated—that the petitioner has an adequate remedy at law by the commencement of proper proceedings in the Probate Court of this county.