MRS. LOY STEPHENS WICKS, ET VIR, V.
MISS EDITH COX, ET AL.

No. A-1420. Decided February 18, 1948.
Rehearing overruled March 17, 1948.
(208 S. W., 2d Series, 876.)

490

*Irwin & Irwin* and *T. K. Irwin, Jr.,* and *Chaney & Davenport,* and *F. B. Davenport,* all of Dallas, for petitioners.

*G. O. Youngblood, Bern Wilson* and *Joe H. Jones,* all of Dallas, for respondents.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

This rather unusual child custody case arises on habeas cor-

pus proceedings in Dallas County. Throughout this opinion we use the trial court designation of the parties. Relator, Miss Edith Cox of Lynchburg, Virginia, supported by intervenor, A. H. Mason, the qualified and acting probation officer of the Juvenile and Domestic Relations Court of Lynchburg, sought to recover the child from the possession of respondents, its mother and stepfather, Mr. and Mrs. Loy Wicks of Dallas County on the ground that early in 1941 Mrs. Wicks and her then husband, John Lambert Stephens, (father of the child), had abandonded the child in Lynchburg where the parents and child then resided; that in a state of dire necessity the child was thereupon taken into custody by intervenor, Mason, in his capacity as probation officer, and turned over to relator, Miss Cox, who, under his authority kept it and adequately supported it herself continuously from that time until October 11, 1946, when the respondent mother came to Lynchburg and, without the knowledge or consent of relator or any authority of Lynchburg or the State of Virginia, got possession of the child by a ruse while it was at school and forthwith carried it off with her to Dallas. Respondents' answer consisted of a general denial, prayer for custody of the child based upon changed conditions since 1941 and other allegations not necessary to mention here. The child's father was not a party to the proceedings, and the only evidence in the record regarding him was undisputed evidence that, while domiciled in Virginia in 1941, he had abandoned both respondent and their children, including the child here in question, has since contributed nothing to the support of the child and was a drunkard. There is nothing in the record about his present or recent whereabouts. It also appears that he and the respondent mother were divorced in 1943, that in 1945 the mother was married to her present husband, Loy Wicks, and that the two latter have been domiciled as husband and wife in Dallas County since some time in 1945. The 1943 divorce decree, which was introduced in evidence over the objection of relator and intervenor, contained a recital that the respondent mother had been awarded custody of the children by a Virginia decree, but for the purpose of this opinion, we will assume such recital to be without legal effect.

Upon a trial to the court the latter rendered judgment awarding custody of the child to the respondent mother, the decree containing the only findings in the trial record, to-wit; (a) that the material allegations of relator and intervenor were false and (b) that respondent mother was "a proper person" to have custody.

The Court of Civil Appeals held that by the undisputed evidence the child was legally domiciled in Virginia at the time of suit and accordingly beyond the jurisdiction of the courts of Texas to regulate its custody. On this ground it reversed the trial court and rendered judgment "to award the child to the duly qualified and acting probation officer of the Juvenile Court of Lynchburg, Virginia, so that such officer might take such child back to the City of Lynchburg and let the proper court in that jurisdiction make such award of the care, custody and control of said child as provided under the laws of the State of Virginia." The court evidently considered only such assignments of error as related to the question of jurisdiction.

While we granted the writ of error upon the point attacking the holding that the child was legally domiciled in Virginia, we have elected to decide the case upon the broader question of whether, assuming the Virginia domicile, the Dallas District Court lacked jurisdiction to award custody. We think the court had jurisdiction, and that accordingly the judgment of the Court of Civil Appeals should be reversed.

■ In Goldsmith v. Salkey, 131 Texas 139, 112 S. W. (2d) 165, 116 A. L. R. 1293, this court adopted the opinion of the Commission of Appeals which in turn clearly rejected the theory that our courts must decline jurisdiction to award custody whenever it appears that the legal domicile of the child is in another state. In that case the child was present in Texas in the custody of its mother, a Texas resident, but its legal domicile was clearly in Missouri, where the father resided and had custody about three-fourths of each year under an apparently valid Missouri decree. The court evidently thought then, as we think now, that the sounder rule on the point emanates from Justice Gaines in Campbell v. Stover, et ux., 101 Texas 82, 104 S. W. 1047; that Campbell v. Stover overruled anything to the contrary in the slightly earlier case of Lanning v. Gregory, 100 Texas 310, 99 S. W. 542, 10 L. R. A. N. S. 690, 123 Am. St. Rep., 809, and should prevail over any contrary doctrine deducible from the later case of Milner v. Gatlin, (Com. App., holding approved by Supreme Court) 261 S. W. 1003. Our recent decision in Peacock v. Bradshaw, 145 Texas 68, 194 S. W. (2d) 551, mentioned by the Court of Civil Appeals, does not conflict with Goldsmith v. Salkey, supra. The Peacock case held that the child's legal domicile was in Texas, and that the Texas court had custody jurisdiction despite the fact that the child was physically beyond the state at the time of the proceedings. So, whatever doubt may have once existed on the sub-

ject, the rule now is that technical legal domicile of the child in this state is not a *sine qua non* of child custody jurisdiction on the part of our courts.

The foregoing does not, of course, mean that our courts should take jurisdiction to award custody in every case where the child and the parties contending for its possession happen to be here before the court. Nor does it mean that a child's foreign legal domicile is not an important consideration in cases of this kind. We certainly do not imply that our courts should be accessories after the fact to disorderly practices of individual parents or others who thus seek to avoid the normal processes of justice by *ex parte* determination of what they happen to consider a more propitious forum. A review of the decisions bearing on the subject shows the impracticability of trying to formulate rules in other than the most general terms. For example, the New York Court of Appeals, speaking through then Justice Cordozo, once put it thus:

"The jurisdiction of a state to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless. Woodworth v. Spring, 4 Allen (Mass.) 321, 323; White v. White, 77 N. H. 26, 86 Atl. 353; Hanrahan v. Sears, 72 N. H. 71, 72, 54 A. 702; Matter of Hubbard, 82 N. Y. 90, 93. For this, the residence of the child suffices, though the domicile be elsewhere. Matter of Hubbard, supra. 82 N. Y. 90. But the limits of the jurisdiction are suggested by its origin. The residence of the child may not be used as a pretense for the adjudication of the status of parents whose domicile is elsewhere, nor for the definition of parental rights dependent upon status." Finlay v. Finlay, 240 N. Y. 429, 148 N. E. 624, 40 A. L. R. 937.

**2** The principle underlying jurisdiction of the subject matter in child custody cases is the welfare of society, primarily as evidenced by the welfare of the child, but involving also the right, and, for that matter, the duty, of a state, being the relatively independent sovereign that it is, to look after the welfare of individuals within its borders, as well as the duty of such state to contribute toward the orderly administration of justice under our federal system by paying due heed to existing relationships on the part of the child or other persons concerned with other states, whether within or without the scope of the full faith and credit clause of the federal constitution. Ordinarily the courts of the domiciliary state are in a better position to pass intelligently on the matter of the child's wel-

fare, and good order frequently requires that they do so to the exclusion of courts of other states in which the child is temporarily resident. But where the latter are in a more or less equally good position to determine the child's best interest, and their doing so appears to involve no particular prejudice to good order or social welfare, they have jurisdiction. We believe that a proper interpretation of the above cited authorities of this state is in harmony with this view.

■ Applying the foregoing to the present case, and still assuming the technical legal domicile of the child to be in Virginia, we see no reason why the Dallas Court should not have taken jurisdiction of the subject matter. In addition to the child being in Dallas, the respondent mother was domiciled there with her husband since approximately a year prior to the suit. The Dallas Court was surely in as good a position as a Virginia Court to pass on the character and resources of the stepfather as well as other local circumstances bearing on the kind of life the child might lead if custody were awarded to respondent mother. The child's real father had admittedly failed to contribute to the support of the mother or the child or even to evidence the slightest interest in them for several years past, and their three other children were during all this time on the charity of the maternal grandmother and the City of Lynchburg, so nothing in relation to him appears to make the Dallas forum inappropriate, although these facts and the fact that he and the respondent mother were divorced without award of custody of the children to him, add to the importance of the mother's Dallas domicile as favorably affecting the Dallas Court's jurisdiction.

Nor do we see any serious prejudice to good order in the Dallas Court taking jurisdiction. The full faith and credit clause is not involved. It is true that the child was in the care of relator and intervenor at Lynchburg for some five years, during which time neither its father nor mother, then domiciled there, made a serious effort to fulfill their elementary parental duties. Under intervenor's authority as probation officer, relator, during all that time, took the place not only of the child's mother but also of its father, thus saving the life of a future useful citizen and earning far more gratitude than these proceedings show her to have received. But rightly or wrongly, human justice does not concern itself with things like gratitude. Although the laws of Virginia evidently contain adequate provision like our own for judicial termination of parental rights with a respect to neglected children and for adoption by more deserving par-

ents, no such measures of either a formal or summary nature were even attempted with respect to the child here involved. While the Virginia law in evidence (Chapter 78, Virginia Code of 1942 Annotated) doubtless authorized intervenor to take such informal steps as he did with reference to care and con-control of the child, if any special authority was necessary in such a case, there is nothing whatever in the law authorizing an extra-judicial commitment or executive destruction of the parental right of control. In fact everything in the law indicates judicial action to be necessary. The probation officer testified that he proceeded "on my own authority." He was obviously not a judicial officer. As far as we can determine from the record, the status of the child in Virginia was somewhat the same as if the parents had simply left the child with a third party under agreement that the latter might keep it as his or her own. In such a case our courts hold (and in the absence of contrary evidence, we presume the Virginia courts to hold likewise) that in subsequent litigation between the parties over custody of the child, the parent's right is presumptively superior, and the other party must discharge the burden of showing that the child's best interest will be served by custody in such other party, this despite the solemnity of the agreement or the length of time it may have been acted on in good faith by the other party. State ex rel Wood v. Deaton, 93 Texas 243, 54 S. W. 901; Legate v. Legate, 87 Texas 248, 28 S. W. 281; Taylor v. Deseve, 81 Texas 246, 16 S. W. 1008, Dunn v. Jackson, 231 S. W. 351. A corollary to the above, as evidenced by the same decisions, is that under such circumstances the duties of the parent toward the child subsist. A further corollary, as expressly stated in Taylor v. Deseve, supra, is that the parent has the presumptive right at any time to take back his or her child. The more existence of facts, such as the long and devoted custody of the non-parent or the unworthy character of the parent, which when developed in a judicial proceeding will defeat the rights of the parent, does not of itself and without any judicial proceeding destroy the parent's right of physical custody. DeWitt v. Brooks, 143 Texas 122, 182 S. W. (2d) 687, does not hold anything at variance with the above. On the contrary, it emphasizes how genuine under our laws are the rights of even neglectful parents until such rights are extinguished by judicial process. The respondent mother's parental right to control of her own child had not, therefore, been extinguished at the time she got possession of the child at its school at Lynchburg by pretending to the teacher that she wanted to take its picture. In the face of her existing rights, we do not think her conduct in thus peaceably, though deceitfully, taking the

child from the informal custody of the probation officer was such as to require the Dallas Court to decline jurisdiction upon comity grounds, even though such conduct might conceivably have been a misdemeanor under section 1919 of the Virginia statute. Some states do not decline jurisdiction even where the child is brought into the state in plain violation of a valid court order of another state. See note in 107 A. L. R. 642.

The foregoing requires reversal of the judgment of the Court of Civil Appeals, and it is so ordered. Since that court passed only on the assignment of error relating to the trial court's jurisdiction, and the remaining assignments include at least one as to which the Supreme Court does not have jurisdiction, the case will be remanded to the Court of Civil Appeals for further proceedings not inconsistent with this opinion.

Opinion delivered February 18, 1948.

Rehearing overruled March 17, 1948.