AVENIER et al. v. AVENIER et al.

No. 11852.

Court of Civil Appeals of Texas.
San Antonio.
June 30, 1948.

Rehearing Denied July 14, 1948.

Mann & Nesbitt and Elmore H. Borchers, all of Laredo, and James A. Hynes and LeRoy & Denslow, all of Washington, D. C., for appellants.

Gordon Gibson, of Laredo, for appellees.

NORVELL, Justice.

This is a child custody case. The judgment of the district court was rendered on March 1, 1948. At that time the minor Jean Marc Avenier was 11 years of age and the minor Marie Josephe was 8 years of age. Michel Avenier, the father of the children, and his mother, Marie Louise Avenier, were the actors in the proceedings below. They were unsuccessful in their attempt to obtain custody of the children, which was awarded to the mother, Margarita Guirola de Avenier.

The trial judge filed findings of fact, from which we make the following statement:

Michel Avenier and Margarita Guirola were married in Paris, France, on December 21, 1935. Avenier was a French national and Margarita Guirola was the daughter of citizens of the Republic of El Salvador, then residing in Paris.

In May of 1941, Margarita Guirola instituted suit in a French court for the purpose of securing a separation from her husband and custody of her minor children. In December the court established a separate residence for Margarita and entrusted the children to her, and ordered Avenier to pay to her monthly the sum of 1000 francs alimony and 1000 francs for the support of each of the children.

In 1942 Avenier filed a proceeding in the nature of a cross-action praying for a separation a mensa et thoro and for custody of the children.

After this action had been taken, Margarita Guirola offered to entrust the two children to the custody of Marie Louise Avenier, a widow, the mother of Michel Avenier.

In July, 1942, the French court denied the wife's plea for separation, but granted the prayer of the husband. Custody and care of the two children were entrusted to the grandmother, Marie Louise Avenier, in accordance with the agreement. Avenier was allowed to see the children freely, as he lived with his mother. Margarita Guirola was allowed to have the children with her for one-half the Christmas and Easter vacations and during the summer.

In May of 1944, Margarita Guirola, having the children with her during the Easter vacation, proceeded to carry out a preconceived plan to escape from France, which was then occupied by the Germans. She was eventually successful in crossing the border into Spain and proceeded from thence with her children to the Republic of Mexico, where she joined her parents. Since that time she has resided with her parents in Mexico.

On April 7, 1945, Margarita Guirola secured a decree of divorce against Michel Avenier from the Court of First Instance of Jojutla, Third Judicial District of the State of Morelos. Constructive service was had on Michel Avenier and he had no actual knowledge of these proceedings, and consequently no defense was interposed. The Mexican decree awarded the custody of the children to Margarita Guirola. When Michel Avenier learned of the divorce proceedings, he filed suit in a federal district court to have the decree vacated in accordance with applicable provisions of the Mexican Code. The decree was set aside by the district court, but the Supreme Court of the Republic of Mexico reversed the district court, holding that the review sought in the federal court had not been instituted within the time allowed by law.

The concluding findings of fact of the trial judge were as follows:

"11. In the latter part of November, 1945, Jean Marc was enrolled as a boarding student in St. Joseph's Academy in Laredo, Texas, and Marie Josephe was enrolled as a boarding student in the Mary Help of Christiáns School in Laredo, Texas. Since November, 1945, both of said children have continued as boarding students in their respective school except during the summer vacations which they have spent with their mother, Margarita Avenier.

"12. Whether Marie Louise Avenier, Michel Avenier, or Margarita Avenier, is awarded and takes over the possession, care, and custody of said children, such children's present and future welfare will be protected and neither their health, morals, nor training will be endangered.

"13. If under the rules of law applicable to the facts of this particular case, it is material for the trial court not only to determine what is the *existing* legal status of the various parties concerning the present legal rights to the possession, care, and custody of the children, but also to hear evidence and to determine *anew* the relative benefits and disadvantages to the future welfare of the children themselves if the future possession, care, and custody of the children is awarded to the father or to the mother or to the grandmother, respectively, then here are the findings of the trial court thereon.

"The future best interests of the two children would be promoted and safeguarded in a friendly and happy home maintained by their two parents and under circumstances of mutual respect, congeniality, and affection among the grandparents, their children and their grandchildren, all with each other. However, to such extent the trial court is powerless to make provisions for the true best interests and welfare of the children.

"Of the innumerable factors, each of which will undoubtedly in some degree affect the future life and welfare of both of the children, one of the most important is that in the future the children should have a definite home and a sense of security and stability and not be a continuous center of controversy concerning their possession and custody.

"Jean Marc, at the age of seven years six months, and Marie Josephe Avenier, at the age of five years three months, in May, 1944, some three years eight months ago, were taken from the possession and care of their paternal grandmother in France and transplanted into a new environment and a different way of life. Whether legally or illegally done and accomplished, since May, 1944, Jean Marc and Marie Josephe have been deprived of the companionship of their paternal grandmother and their father, and have looked to, and relied on their mother and on their maternal grandparents for such companionship and parental care as they have had. It is only natural that since May, 1944, the children have grown roots into the situation as represented by the defacto custodianship of their mother and their mode of life under her possession and care. Although as previously found herein as a fact, it would not actually endanger the health, morals, or training of such children to permit the paternal grandmother to resume possession of said children and return them to France, it would be better for the future welfare of such children if they were not again uprooted and removed to France to be retransplanted there under the possession and care of a different person or persons in a different environment and with a different mode of life from that which the children have experienced since May, 1944. This finding is based on the trial court's belief in the truth of the statements of the mother, Margarita Avenier, that if she does obtain legal custody of the children she intends to and will make arrangements under which the children will have a true home with her and will have her sincere personal attention, companionship, and affection rather than such mother delegating such parental and custodial duties and privileges to other persons or to institutions."

The trial judge originally filed elaborate and detailed conclusions of law. They occupy about eight pages of the transcript and are in the form of a judicial opinion containing numerous citation of authorities. The judge concluded that the French divorce proceedings were valid and binding and that the Mexican divorce proceedings were void. On this basis he concluded that the children should be awarded to Marie Louise Avenier for return to the Republic of France. The authorities cited and relied upon by the trial court were Peacock v. Bradshaw, 145 Tex. 68, 194 S.W.2d 551; Lanning v. Gregory, 100 Tex. 310, 99 S.W. 542, 10 L.R.A., N.S., 690, 123 Am.St.Rep. 809; Mauldin v. Buchanan, Tex.Civ.App.,

198 S.W.2d 469 (which follows Lanning v. Gregory), and Cox v. Wicks, Tex.Civ.App., 203 S.W.2d 979.

After these original findings and conclusions had been prepared the trial judge was furnished with a copy of the Supreme Court's opinion in Wicks v. Cox, 208 S.W. 2d 876, reversing Cox v. Wicks, Tex.Civ. App., 203 S.W.2d 979. As a result of this opinion, the trial judge prepared an addendum to his original conclusions of law, which had the effect of repudiating the original conclusions and substituting others therefor. In the substituted conclusions it was stated that "this trial court accepts jurisdiction to determine the relative benefits and disadvantages to the future welfare of the Avenier children themselves if the future possession, care, and custody of the children is awarded to the father or to the mother or to the grandmother, respectively, and finds thereto as set out in Section 13 herein and concludes therefrom that the said Avenier children should be awarded to the custody of Margarita Guirola Avenier."

Judgment was rendered accordingly.

Michel Avenier and his mother, Marie Louise Avenier, rely upon five points for a reversal of the judgment, which are as follows:

"Point One. The trial court erred in altering the custodial status previously established by the French court where the children were merely found within 'the trial court's territorial jurisdiction, having been illegally taken there, none of the parties or the children ever having been domiciled in Webb County; and there was no showing that the French custodian was unfit to have custody.

"Point Two. The trial court erred in countenancing and giving legal effect to an illegal and wrongful removal of the children from their lawful custodian.

"Point Three. The trial court erred in failing to give effect to the French decree awarding custody to relator Marie Louise Avenier since there was insufficient evidence of any materially changed conditions or circumstances justifying any alteration of the terms thereof.

"Point Four. The trial court's finding that it was better for the future welfare of the children to award their custody to respondent was not sustained by sufficient evidence.

"Point Five. The trial court erred in awarding custody to respondent, where he concluded that it would be better for the children to recognize the illegal custody which brought about a new environment, and based such conclusion upon the statements of respondent as to her intentions in the event she secured legal custody of the children; it having been found that the children's welfare would be properly safeguarded in the hands of the French custodian."

Appellants' first two points raise the question of custody jurisdiction of the Texas courts, which we regard as controlling in this case.

In Peacock v. Bradshaw, 145 Tex. 68, 194 S.W.2d 551 (cited in the trial court's original conclusions of law), the child's domicile was in Texas and it was held that the Texas courts had custody jurisdiction despite the fact that the child was physically beyond the state at the time of the proceedings.

In Wicks v. Cox, the Peacock case was distinguished upon the facts and it was pointed out that Goldsmith v. Salkey, 131 Tex. 139, 112 S.W.2d 165, 116 A.L.R. 1293, controls over Lanning v. Gregory, 100 Tex. 310, 99 S.W. 542, 10 L.R.A., N.S., 690, 123 Am.St.Rep. 809, and Milner v. Gatlin, Tex. Com.App., 261 S.W. 1003. The Supreme Court held that the Texas court had custody jurisdiction although it be conceded that the child's domicile was in the State of Virginia.

The principle underlying the Texas rule recognizing custody jurisdiction of a child, even though the parents and the child have a domicile or domiciles outside the State is, "the welfare of society, primarily as evidenced by the welfare of the child, but involving also the right, and, for that matter, the duty, of a state, being the relatively independent sovereign that it is, to look after the welfare of individuals within its borders, * * *." Wicks v.

Cox, Tex.Sup., 208 S.W.2d 876, 878, or, as stated in Finlay v. Finlay, 240 N.Y. 429, 148 N.E. 624, 40 A.L.R. 937 (quoted with approval in Wicks v. Cox):

"The jurisdiction of a state to regulate the custody of infants found within its territory *does not depend upon the domicile of the parents*. It has its origin in the protection that is due to the incompetent or helpless. Woodworth v. Spring, 4 Allen, Mass., 321, 323; White v. White, 77 N.H. 26, 86 A. 353; Hanrahan v. Sears, 72 N.H. 71, 72, 54 A. 702; Matter of Hubbard, 82 N.Y. 90, 93. For this, the residence of the child suffices, *though the domicile be elsewhere*. * * *" (Italics ours.)

■ The rule stated is not without limitations or qualifications, which of necessity must be stated in general terms so as not to unduly hamper and restrict the exercise of a desirable jurisdiction. The limitation is stated along with the rule in Wicks v. Cox. After holding that "technical legal domicile of the child in this state is not a sine qua non of child custody jurisdiction on the part of our courts," the Supreme Court said:

"The foregoing does not, of course, mean that our courts should take jurisdiction to award custody in every case where the child and the parties contending for its possession happen to be here before the court. Nor does it mean that a child's foreign legal domicile is not an important consideration in cases of this kind. We certainly do not imply that our courts should be accessories after the fact to disorderly practices of individual parents or others who thus seek to avoid the normal processes of justice by ex parte determination of what they happen to consider a more propitious forum."

In our opinion the decree of the court appealed from does not offend against good order nor tend toward the encouragement of disorderly practices.

■ The French decree upon which appellants rely was entered with the consent of the wife in 1942. Since 1944 the children have not resided within the Republic of France. Opposed to the French decree is the conflicting judgment, as to custody of the children, rendered by a Mexican court. This is not a simple case in which a child has been taken from one state in the American union to another. Decrees of two jurisdictions foreign to the United States are involved. The grim impact of war upon the French Republic, its occupation by the German conqueror, the disruption of normal international relationships, and the consequent effects upon the persons here involved can not be ignored. The appellee here insists that the only reason she consented to an award of custody to the paternal grandmother was sheer economic necessity. The appellee's flight from France is cast in contrasting lights by the conflicting evidence of the parties. All these circumstances disclose unusual and abnormal conditions. Upon this background and in the light of Wicks v. Cox, we hold that the trial court did not err in assuming custody jurisdiction and giving controlling importance to the fact finding relating to the welfare of the children involved. We overrule appellants' first and second points.

■ Appellants' third point is based upon an assumption (which they do not admit) that the trial court would have jurisdiction to change the custody had a change in conditions been shown. It is argued that no change of conditions is disclosed from the time of the French decree in 1942. Assuming that the French decree would operate as res judicata as to all matters transpiring prior to the date of its rendition, it is nevertheless, well settled that a change of custody may be ordered upon a showing of a change in conditions. It can hardly be maintained that there has been no change in conditions or circumstances affecting the children here involved within the last five or six years. Active and open warfare in Western Europe has ceased; the children have been transported from one continent to another, and the de facto custody at least was radically changed in 1944. Appellants' argument is that "changes of condition" were brought about in an unlawful manner in that the children were taken from France in violation of the French custodial decree.

It seems that appellee gained possession of the children in a lawful manner. The

decree allowed her to have the children with her during a part of the Easter vacation. The "wrong" was in failing to return the children to the paternal grandmother when the vacation was over. The situation was somewhat similar to that disclosed in Goldsmith v. Salkey, 131 Tex. 139, 112 S.W.2d 165, 170, 116 A.L.R. 1293, cited with approval in Wicks v. Cox, in that the mother having rightful possession of the child did not return it to its Missouri domicile but chose to litigate the matter of custody in Texas. Since possession of the child by the mother was lawful in its inception, the Supreme Court held that "her custody was legal." From the standpoint of the appellee, it appears that while having legal possession of the children she took them to the Republic of Mexico, where her parents lived and where she established her domicile. In Mexico, she brought legal proceedings relating to the custody of the children. While under her actual control, the children were placed in school in the United States at Laredo, Texas, and she now asks that they be returned to her. She convinced the trial judge that it would be in the best interests of the children to grant this request. The record, upon the theory of "changed conditions", supports the action taken. Appellants' third point is overruled.

■ By their fourth and fifth points the appellants, in effect, urge that the trial court abused its discretion in holding that the children's welfare would be best served by awarding custody to the mother. Appellants call attention to the statement of the rule as stated in 17 Am.Jur. 513, § 675, viz.:

"In awarding the custody of a child, a very large discretion must be permitted to the chancellor, but it must be a judicial discretion, subject to review."

■ The testimony in the case is extensive. It involves charges of unfitness and misconduct upon both sides. The credibility of witnesses was a matter for the trial judge, who in effect found that the mother of the children was not an unfit person to have custody of her children. It would serve no useful purpose to review at length the testimony bearing upon the issue. Much of it is conflicting and contradictory. We have concluded that the issue was one for the trial court and that no abuse of discretion is disclosed. Appellants' fourth and fifth points are overruled.

In our opinion none of appellants' points discloses a reversible error and the judgment appealed from is accordingly affirmed.