**RAYMOND v. UPDEGRAFF et al.**

No. 12521.

Court of Civil Appeals of Texas. San Antonio.

Feb. 18, 1953.

Fischer, Wood & Burney, Corpus Christi, for appellant.

North, Blackmon & White, Corpus Christi, for appellees.

POPE, Justice.

This is a suit which concerns the custody order of an Oklahoma Court with reference to an eight-year-old child who has already been the subject of six judicial proceedings.

In 1948, when the child was four years old, his parents were divorced by a decree of the District Court in Muskogee County, Oklahoma. Both parents have remarried and apparently have happy and suitable homes and seem devoted to the child. The custody provisions of the divorce decree were amended by agreement of the parents in October of 1950, when both parties again submitted themselves to the jurisdiction of the District Court of Muskogee County, Oklahoma. In August of 1951, the mother commenced proceedings to alter the custody order and she elected to file those proceedings again in Muskogee County, Oklahoma. The resulting decree continued in force its former order entered by agreement of the parties. In May of 1952 the mother again filed a suit for a change of custody and again selected the District Court of Muskogee, Oklahoma, and again that court continued in force its former orders. That last order was entered on August 8, 1952, and under its terms the mother was entitled to the custody of the child until one week before the child returned to school in Oklahoma, where he had always gone to school. Eighteen days later, the mother and her husband commenced a new proceeding in Texas to relitigate custody. The Texas court sustained a plea to the jurisdiction to that proceeding, but upon the mother's failure to obey the orders of the Oklahoma

court, the father immediately commenced this proceeding by suing on the Oklahoma decree for possession of the child, to which he was entitled under that decree.

■ The judgment will be reversed. We are not convinced that "the Texas court was in a better position to pass intelligently on the matter of the child's welfare" than the courts of Oklahoma. Worden v. Worden, 148 Tex. 356, 224 S.W.2d 187; Evans v. Evans, Tex.Civ.App., 186 S.W.2d 277. This Court does not approve the practice of shopping around among states and courts until the desired judgment is obtained. If that be permitted, not only will there be no comity among courts, but the child's permanent plans will be dependent upon the limits of the parent to travel and file suits. A parent's zeal for custody is admirable, but no less admirable is a personal sacrifice of affection in favor of such stability as is possible on the part of a child of divorced parents. The mother in this case obtained a Texas review of an Oklahoma judgment by the practical expedient of disobeying the Oklahoma decree. Such a practice is disapproved by the Supreme Court.

> "The foregoing does not, of course, mean that our courts should take jurisdiction to award custody in every case where the child and the parties contending for its possession happen to be here before the court. Nor does it mean that a child's foreign legal domicile is not an important consideration in cases of this kind. We certainly do not imply that our courts should be accessories after the fact to disorderly practices of individual parents or others who thus seek to avoid the normal processes of justice by ex parte determination of what they happen to consider a more propitious forum." Wicks v. Cox, 146 Tex. 489, 208 S.W.2d 876, 878, 4 A.L.R.2d 1.

■ The mother's grounds for disobedience of the Oklahoma decree are that changed conditions arose during the eighteen-day interval between the Oklahoma decree and the Texas proceedings. We find no changed conditions. Roberts v. Tippett, Tex.Civ.App., 239 S.W.2d 859; Wilson v. Elliott, 96 Tex. 472, 75 S.W. 368; Wilson v. Elliott, 96 Tex. 472, 73 S.W. 946. The first changed condition claimed is that as a sequel to the last Oklahoma hearing the child became emotionally upset, from which he did not recover for about two weeks, did not eat well, and was a slight disciplinary problem. Whatever decree is rendered with reference to a child whose affections must be divided between divorced parents, especially where there are recurring court trials, will, in a greater or less degree, result in that unfortunate situation. The mother exercised some fears with reference to the child's health, but his activities and the opinion of the child's Corpus Christi physician do not support those fears. And, in any event, the physical condition, even if it exists, did not commence after the court of Muskogee County, Oklahoma, last heard the case, including presumptively the same matter and all other matters that concern the child's welfare.

Significantly, every change in conditions since the hearing and decree by the Oklahoma Court, to which the mother points as being unsatisfactory conditions, occurred during the time she had the custody. There is no showing that the child was emotionally disturbed, sick, neglected, or misbehaved while in the father's home in Oklahoma. The child, except for the period of disobedience of the Oklahoma decree by the mother, has attended school in Oklahoma. The Oklahoma court, in continuing its former orders in effect, no doubt felt that the child's settled and familiar associations should not be permanently disturbed, and we concur in that result. There has been no material change which would justify overriding the Oklahoma decree fixing the child's permanent custody.

The judgment is reversed and rendered that appellees deliver the child to appellant in compliance with the Oklahoma decree.