James V. SHORT, Jr., Appellant,

v.

Barbara SHORT, Appellee.

No. 13804.

Court of Civil Appeals of Texas.

San Antonio.

Sept. 27, 1961.

Rehearing Denied Oct. 22, 1961.

Lawrence H. Warburton, Jr., Perkins, Floyd & Davis, Alice, for appellant.

Lloyd, Lloyd & Dean, Parker Ellzey, Alice, for appellee.

MURRAY, Chief Justice.

This is a child custody case between James V. Short, Jr., and his former wife, Barbara Short, in which the father seeks the care and custody of their two children, James Eldon Short, age 3, and Sherrie Lynn Short, age 2. James V. Short, Jr., filed a petition in the District Court of Jim Wells County, Texas, on November 16, 1960, for a writ of habeas corpus to secure the possession and custody of the two children. Barbara Short answered this petition on November 18, and also filed a cross-action asking that she be awarded the permanent care, custody and control of her two children. James V. Short, Jr., immediately appeared in the District Court of Jim Wells County and announced ready on both the application for temporary custody of the children and upon the cross-action for permanent custody of them, and stated in effect that he was invoking the jurisdiction of the Jim Wells District Court for both purposes, and wanted the issues raised heard and determined by that court. Whereupon a trial before the court without the intervention of a jury was begun. Evidence was heard showing that James and Barbara Short were married in the State of New Mexico about one year before the birth of their son, James Eldon, on August 27, 1957. On September 6, 1958, their daughter, Sherrie Lynn, was born, and about two weeks thereafter the parents separated and have not lived together as man and wife since that date. Thereafter, Barbara Short filed a suit for divorce, and on June 25, 1959, she was granted a divorce from James V. Short, Jr., and was awarded the care and custody of her two small children. The suit was filed in the District Court of Lea County, New Mexico, being Cause No. 16727, styled Barbara Short v. James V. Short, Jr. At the time, both parties were living in Lovington, New Mexico. Thereafter, James

V. Short, Jr., instituted proceedings to have the custody of the two children changed to him. An order was introduced in evidence in the court below, styled "Order Modifying Judgment," rendered in the same court and in the same suit above described, reciting that the matter came on for hearing on June 22, 1960, and showing that the order was not filed until August 30, 1960. This order recites the appearance of the parties, and finds "that it would be to the best interest of the children that the custody be taken from the mother, plaintiff, and given to their father, defendant," and it was so ordered.

In this connection, Barbara Short testified as follows:

"Q. The fact that the Court had awarded custody to your husband was communicated to you, was it not? A. Yes, sir.

"Q. Now, immediately after that was told to you, what did you do? A. I went to the Judge's Chambers, I guess you would call it that, and asked the Court Stenographer if I could see the Judge. He said that he had left.

"Q. Yes. A. And I asked if I might get a copy of the Order.

"Q. Yes. A. He said, 'no ma'am.' He said, 'we will not be able to get that copy for you for two or three months,' and then I left, left his office, and got in my car, got back out of the car, went to the bank and cashed a check, got back in the car, went to my home and got my children—well, to the neighbor's home right next to my parents; got my children and left.

"Q. And left New Mexico? A. That is correct.

"Q. Where did you go? A. Well, we have been just about sixteen thousand miles. I couldn't tell you every place that we have been.

"Q. You say 'we'. Who is the other party? A. My children, and Mr. Wood and I.

"Q. Mr. Wood. What is his first name? You call him Cotton? A. Cotton.

"Q. And Mr. Wood is married, is he not? A. That is correct.

"Q. And did you continue to live with him during this period of time between June 22nd and today? A. No, sir, I did not.

"Q. What places did you go in your sixteen thousand mile trip?

"The Court: Is this relevant to this?"

She went on to testify that she had not been 16,000 miles, but her car had been that far; that they stopped in Arkansas for a while and finally came to Alice, Texas, about three months before this trial. She lived there with her aunt and uncle, Mr. and Mrs. Seth Taylor, upon whom she is dependent for support. She now has an apartment, where she and her children live. Mr. Wood is also in Alice. He does not live with her and the children, but has an apartment of his own. She and Mr. Wood are to be married when he secures a divorce. He has four children. She denied positively that she had lived with Mr. Wood or engaged in any immoral conduct with him. It was stated during oral argument that Mr. Wood had since secured his divorce and that he and Barbara are now married and living in Alice, Texas.

She has never been separated from her children and loves them very much, and they love her. She has always cared for them in every way. This testimony was corroborated by Barbara's aunt, Mrs. Seth Taylor, and other friends and neighbors in Alice, where Barbara had been residing for three months.

The order modifying the divorce decree was not entered until some two months aft-

er Barbara had left New Mexico, and it is a fair deduction from the evidence that it was not rendered until that time, though she had been informed by her lawyer that it was going to be rendered. She and Mr. Wood have been arrested upon a warrant of arrest issued out of the State of New Mexico, and have given bond to appear before a Justice of the Peace in Alice. If the State of Texas approves their extradition, they will have to return to New Mexico to answer the charges there. The record does not show them to be guilty of any crime in New Mexico, and they are therefore entitled to a presumption of innocence. When Barbara left New Mexico with her children she was lawfully in charge of them, and, so far as this record shows, was not inhibited in any way from taking them out of the State. The order changing the custody of the children was not filed in court until more than two months later. It is true, her lawyer told her that she was going to be deprived of the custody of her children, but the only evidence that they were ordered taken away from her is the order filed August 30, 1960.

She is the only mother the two children have ever known, and the father scarcely knows the little girl, because he left when she was only two weeks old, and has not seen her since, except upon a few short visits.

The trial court, after a hearing, ordered the care and custody of the children awarded to the mother, with the right of reasonable visitation given to the father, from which judgment James V. Short, Jr., has prosecuted this appeal.

Appellant's first point is as follows:

"The Trial Court erred in awarding custody to the Appellee as the Court had no jurisdiction to do so or in the alternative, abused its discretion in taking jurisdiction."

We cannot agree that the District Court of Jim Wells County did not have jurisdiction to render the judgment which it did render herein. The jurisdiction of the court was invoked by appellant himself. He instituted the habeas corpus proceedings in the Texas Court. It is true that he might have invoked such jurisdiction for the purpose of determining the temporary custody of the children, if he had so desired, but he answered the cross-action of appellee raising the issue of permanent status or custody of the children, and eagerly sought a hearing on this matter. He stated he wanted the Texas Court to pass upon the permanent custody of the children, and he will not now be heard to contend that the court was without jurisdiction, and the court did not abuse its discretion in taking jurisdiction. Wicks v. Cox, 146 Tex. 489, 208 S.W.2d 876, 4 A.L.R.2d 1. Appellant admitted all necessary jurisdictional facts when he answered the cross-action and asked the court to proceed with a hearing on the permanent status of the children, without taking any exception or objection to the court's jurisdiction.

The case of Bevan v. Bevan, Tex.Civ. App., 283 S.W.2d 305, decided by this Court, is distinguishable from the case at bar. There it was the wife who fled to Texas with the children and tried to invoke the jurisdiction of the Texas Court. She did so while the suit in Oklahoma was still pending. The husband did not invoke the jurisdiction of the Texas Court, but objected and excepted to its jurisdiction. In the case at bar, neither the appellant nor the appellee lived in New Mexico at the time of its hearing. The hearing in New Mexico had been on June 22, 1960. This suit was filed on November 16, 1960, some five months later. In June, 1960, both appellant and appellee were residents of New Mexico, and appellant's mother, upon whom he was depending to help him rear the children, was also a resident of New Mexico. The children were also in New Mexico. Now appellee and the children are residing in Alice, Texas, and appellant has moved to Lincoln, Nebraska. If he could secure a judgment in Texas awarding the permanent custody of the children to him, he could take them to Nebraska at once and everything would

be settled for the time being, but if he only succeeded in having the children returned to New Mexico there could still be a further hearing, as to whether conditions had changed since the entering of the modified decree in New Mexico. With all of this before him, he asked the Court in Alice, Texas, to hear the entire question of custody, and having received an adverse judgment he cannot now be heard to say he has changed his mind and wants a hearing in New Mexico. Knollhoff v. Norris, 152 Tex. 231, 256 S.W.2d 79; Goldsmith v. Salkey, 131 Tex. 139, 112 S.W.2d 165, 116 A.L.R. 1293; Anderson v. Martin, Tex.Civ.App., 257 S.W.2d 347; Avenier v. Avenier, Tex. Civ.App., 216 S.W.2d 638; Black v. Adams, Tex.Civ.App., 214 S.W.2d 703.

Appellant's second point is as follows:

"The Trial Court erred in granting a change of custody as there were no change in conditions from the date of decree which would justify such an order or in the alternative, the Court abused its discretion in granting said order under the circumstances."

The trial court, in rendering the judgment that it did, necessarily found that there were changed conditions since the rendition of the New Mexico order modifying the original divorce decree, and that the best interest of these small children would require that their custody and care be given to their natural mother.

■■ The facts above pointed out certainly justified the trial court in impliedly holding that there were changed conditions. Among other things, at the time the New Mexico decree was entered all parties, including the children, were in New Mexico. Appellant had available to him the assistance of his father and mother in caring for these children. Now all parties to this suit, including the children, do not live in New Mexico. Appellant and his mother both testified that the mother was willing to go to Lincoln, Nebraska, to help him get started with the children, but it is plain that he would have to hire some one to care for the children and leave them to the mercy of whomsoever he could employ. There is nothing in the record to show that the mother is an unfit person to have the care of her children. They love her and she loves them. Appellant left his wife and children when the little girl was two weeks old. He could be little more than a stranger to her. In the absence of a showing that the mother is positively disqualified to have the custody of her children of the tender ages of two and three years, she should be given their custody. Longoria v. Longoria, Tex.Civ. App., 324 S.W.2d 244; Adams v. Adams, Tex.Civ.App., 319 S.W.2d 414; Danache v. Danache, Tex.Civ.App., 296 S.W.2d 821; Rousseau v. Rousseau, Tex.Civ.App., 268 S.W.2d 556.

The trial court did not abuse its discretion in awarding the custody of these infant children to their mother.

The judgment is affirmed.

BARROW, Justice (dissenting).

I agree that the trial court had jurisdiction of the parties, and the subject matter of the suit, but I disagree with affirmance of the judgment on the facts shown by the record in this cause.

Appellee was on June 25, 1959, granted a divorce from appellant, and was awarded the custody of their two children. Thereafter, appellant filed suit to change the custody of said children. The record does not show when that suit was filed, but the judgment therein, dated June 22, 1960, is in the record to show that on account of appellee's conduct it was to the best interest of the children that their custody and control be taken away from her and awarded to appellant. Accordingly, the court took such custody and control away from appellee and awarded same to appellant. Immediately after the court's decision, appellee took the children and in company with one Cotton Wood, her alleged fiancé, a married man, with a wife and four children, left the State of New Mexico by automobile, to parts not revealed by this record, ex

cept that they did go to the State of Arkansas, and finally arrived in Alice, Texas, where she has been staying. A duly authenticated copy of the decree of the District Court of Lea County, New Mexico, was introduced in evidence and is in the record in this cause.[1] The validity and binding effect of that judgment is not in any way attacked by appellee. The judgment shows on its face that it is based upon misconduct of appellee, which required, in the best interest of the children, that they be removed from her custody.

Appellant filed this suit in the District Court of Jim Wells County, Texas, relying upon and in an effort to enforce the judgment of the New Mexico District Court, rendered after a hearing at which appellee appeared in person and by her counsel, and at which time all parties were resident citizens of that State. We are required to give that judgment full faith and credit. Art. 4, § 1, Constitution of the United States. Therefore, when appellant invoked the jurisdiction of the Texas Court, by his application for habeas corpus to secure the possession of his children, he was then and there their lawful custodian and entitled to them, unless and until appellee, by her cross-action, alleged and proved that (1) there had been a change of circumstances since the New Mexico decree, (2) that such changed circumstances were material, and (3) that the material changes were such as to *require* a change in the custody of the children, considering their best interest and welfare. Ex parte Eaton, 151 Tex. 581, 252 S.W.2d 557, and numerous authorities cited therein. Son v. McConnell, Tex.Civ.App., 228 S.W.2d 290; Leonard v. Leonard, Tex.Civ.App., 218 S.W.2d 296; Bezner v. Sawyer, Tex.Civ. App., 217 S.W.2d 858. Under ordinary circumstances I am in complete agreement with the statement in the majority opinion: "In the absence of a showing that the mother is positively disqualified to have the custody of her children of the tender ages of two and three years, she should be given their custody." It is not only the law, but sound public policy in keeping with natural law. But when a court of competent jurisdiction, in a proceeding in which the mother was present and represented by counsel in a full and fair hearing, has found and rendered judgment that she has so conducted or misconducted herself as to positively disqualify herself to have such custody, the judgment is res judicata and extinguishes her right and privilege. The burden of proof is on her in a subsequent proceeding to show material changes that require, in the interest of the children, that their custody be changed. That is also unquestionably the law of Texas. In the absence of proof that the laws of the State of New Mexico are different, we must presume that such is the law of New Mexico. Rule 184a, Texas

---

1. "In the District Court of Lea County
    State of New Mexico

"Barbara Short,
          Plaintiff,

Vs.                    } No. 16,727

James V. Short, Jr.,
          Defendant.

"Order Modifying Judgment

"This matter came on for hearing this 22nd day of June, 1960, upon the written application of the defendant, James V. Short, Jr., to modify the Judgment entered in this cause on June 25, 1959, to give him the custody of the children for the reason that the mother has conducted herself in such a manner that it is to the best interest of the minor children that their custody and control be taken away from the plaintiff and awarded to the defendant; plaintiff appearing in person and by her attorneys, Neal & Neal, and the defendant and applicant appearing in person and by his attorneys, Williams, Johnson & Houston, and the Court, after hearing the testimony and being fully advised in the premises, finds that it would be to the best interest of the children that the custody be taken from the mother, plaintiff, and given to their father, defendant.

"It is, therefore, ordered, adjudged and decreed that the custody and control of the minor children of the parties, James Eldon Short and Sherrie Lynn Short, be and the same is hereby taken from the mother, plaintiff, and given to the father, defendant; to all of which the plaintiff, Barbara Short, excepts.

"Done in open court.

          "/s/ John R. Brand
          Judge of the District Court"

Rules of Civil Procedure; Milner v. Schaefer, Tex.Civ.App., 211 S.W.2d 600, error refused.

Coming to the matter of change in conditions and circumstances, it is undisputed that upon learning she had lost the custody of these children, she hurriedly took off with this man Cotton Wood and wandered about through three or four States, staying with some of her relatives and some of his relatives, finally landing in Alice, Texas, where at present she resides in a rented apartment paid for by her aunt, Mrs. Taylor, and, according to her own testimony, she is entirely dependent upon the bounty of others for the support of herself and the children. She has no funds, no property, and no employment. Appellee and said Wood are now under bond pending hearing on extradition in felony charges in the State of New Mexico. I agree, that in so far as the prosecution of a criminal case is concerned, as stated in the majority opinion, she is presumed to be innocent, but this does not add to her stature as a proper person to be awarded the custody of these children. As for the change of appellant's condition, the only change is that he got a better job in Lincoln, Nebraska, than he had in New Mexico. His mother will go with him to Nebraska, and will stay with him until he can get a proper person to look after the children while he is working. He testified that if that plan does not work out, he will go back to New Mexico, where his mother can continue to assist him with the children. So we find that the only change in conditions and circumstances of either party, at most, is a change of post office address. Appellant's change brought about by a better job, and appellee's brought about by her own misconduct.

I cannot agree with the statement in the majority opinion that it is a fair deduction from the evidence, even the evidence quoted in the opinion, that the judgment in New Mexico was not rendered until the date the decree was filed, August 30, 1960. I find nothing in the record to justify such deduction. Appellee testified that her lawyer informed her that the judge had awarded the children to her husband. Appellant testified that his lawyer informed him the same thing, and that when he went to look for the children they were gone. The fact that the date of the filing with the clerk might determine the date which controls the matter of timely appeals, etc., is no proof of the date of rendition of the judgment. See, Rule 306a, T.R.C.P. The majority opinion apparently attaches much importance to appellee's being able to get out of the State of New Mexico, or at least Lea County, before the judgment was rendered, if such was a fact. In my opinion, so far as the merits of this case are concerned, it is immaterial whether she got out before or after the judgment was rendered. She knew she had lost the case and fled the State in utter contempt of the judicial processes of that State.

I cannot agree that the facts set out in the majority opinion, or any other facts in this record, are sufficient to show that such a material change of conditions and circumstances has occurred in the short period of time between the judgment in New Mexico and the trial in Alice, Texas, as would require in the best interest and welfare of the children that the custody be changed. Appellee testified that she knew of no change of her conditions which existed back in June in New Mexico, as opposed to her conditions at the time she testified, and that actually there had been no change, other than that she had changed her residence. She also testified that she knew of no change of conditions as to her husband, except that she had been informed that he had changed jobs and no longer lives in New Mexico. The fact that she loves the children, and is the only mother they have ever known, is hardly a change of conditions. Surely, that is not a new-born relationship. The statement in the majority opinion that "There is nothing in the record to show that the mother is an unfit person to have the care of her children," is not supported by this record. There is in the record a judgment finding her disqualified. Added thereto is her own testimony that there has been no change since that

judgment. In her testimony she makes no pretense of reformation, or that her personal conduct has improved. The inference that appellant left his wife and children is not justified by the record. Appellee testified that they were separated off and on for a couple of years, "and we stopped living together approximately two weeks after my baby girl was born." Appellee testified that prior to the divorce appellant's mother kept the boy some, not for a long time, but overnight. She also testified: "After the divorce he was—I permitted to—I permitted them to get him, get my children, from Friday night at six o'clock until Saturday night at six o'clock." When a father keeps his own children for a night and a day each week for approximately a year, it seems to me the conclusion that he is little more than a stranger is hardly justified. At any rate these facts, if they existed at all, existed prior to the New Mexico decree, and cannot be considered as changed conditions.

Since the trial court in this case, after presumably making implied findings of changed conditions requiring a change of custody from the father to the mother, also decreed that the father "shall have the right to have the children with him for a visit from June 15 at 8:00 o'clock A.M. of each year to July 15, at 8:00 o'clock A.M. of each year," and then provided that he must receive the children at appellee's home and return them to her home, and since that judgment has been affirmed by the majority of this Court, it seems to me that the apparent anxiety concerning the safety and well being of these children while in the hands of some well-selected baby sitter in Lincoln, Nebraska, is somewhat over emphasized.

In my opinion, the holding of this Court in Leonard v. Leonard, supra, is applicable and should control here. In that case, a divorce proceeding, upon an agreed judgment the Court gave custody of the child to the father. One hundred and ten days later the mother filed suit to change the custody to herself. The only change in the situation of either party was that she had changed employment, whereby she could be at home with the child all day, whereas, she previously worked away from her home in the daytime and could be with the child only at night. In the instant case appellee filed her cross-action seeking a change of custody one hundred and forty-one days after the beginning of the hearing in the previous case, and only forty-nine days after the date of filing the judgment with the clerk of that court, if that be regarded as the date of rendition. I think the following language in the Leonard case is peculiarly pertinent: "Such frequent hearings as to the custody of children should be discouraged and not encouraged." [218 S. W.2d 301.] The Court further said:

"It was never intended that a solemn judgment such as the one entered in the divorce proceedings agreed to by all the parties and not appealed from should be so soon set aside upon such slight change of conditions as are found in this case."

In my opinion, this case has been disposed of by the trial court and the majority of this Court on the wrong theory of law. It is obvious that they have disregarded or overlooked the judgment of the New Mexico Court, and treated the case as though the parties were on equal standing and placed the burden of proof on appellant to show appellee's unfitness.

This is not a case in which parents, who are resident citizens of different states, are attempting to litigate in their respective states. In this case both parties, as well as their respective parents, were resident citizens of New Mexico, and had been long prior to this controversy, until appellee became a fugitive from that state, for the sole purpose of evading the execution of the judgment of the court. Under the undisputed evidence in this case, together with the legitimate inferences to be drawn therefrom, it is my opinion that the trial judge abused his discretion in this case. The judgment should be reversed and rendered.

I respectfully dissent.