Harold Gene **EVERSON** et ux., Appellants,

v.

Nova Noleta **BOYDSTON** and her husband, Skip Boydston, Appellees.

No. 5631.

Court of Civil Appeals of Texas.

El Paso.

March 18, 1964.

Mike R. Mason, Odessa, for appellants.

Milburn, Bell, Knight & Barnes, Clyde C. Bishop, Odessa, for appellees.

PRESLAR, Justice.

This is an appeal from an order of the District Court of Ector County, Texas, sustaining a plea to the jurisdiction of the court and dismissing a suit for child custody. The sole question for determination is one of jurisdiction, and we have determined that the Texas court does have jurisdiction and should hear the case on its merits.

Appellant, the father, was granted a divorce from the appellee-mother by this same Ector County court in February, 1955, in an uncontested action. The two children of the marriage, Patsy Jean, who is now some 14 years of age, and Paula Kay, who is now 12 years of age, are the subjects of this custody suit. The divorce judgment approved a property settlement, ordered the plaintiff-husband to pay child support, but as to custody of the children it made no award or order, as such. It simply recites that the parties have agreed that the mother shall have custody. Following the divorce the mother took the children to Oklahoma to her parents' home. Some months later she requested the father to take them, she says, until she could get a job. Both parties remarried and the children have remained with the father in Odessa, Texas, through

the years except for visits of several weeks' duration with the mother in Oklahoma. The last such visit, by the younger girl only, brought about this custody suit, when the mother refused to allow her return to Texas. The father filed this suit seeking an award of custody of both girls based on changed conditions. Service was by nonresident citation on the mother in Oklahoma, and she filed a plea to the jurisdiction, and appeared for the hearing from which this appeal is perfected.

■ We think the Texas court has jurisdiction on several bases. Our courts have held that the state in which the children have their domicile has jurisdiction to determine their custody, and that the domicile of children of divorced parents follows the domicile of the parent to whom their custody was awarded. Peacock v. Bradshaw, 145 Tex. 68, 194 S.W.2d 551 (1946). We are of the opinion that the mother failed to meet her burden of proof on her plea to the jurisdiction, in that she failed to establish the domicile of the children as being other than Texas. The divorce judgment being silent as to award of custody, we think that she took them to Oklahoma by agreement of the parties, and that such agreement was changed by the subsequent agreement by which they were returned to the father in Texas. If the domicile of the children followed the mother to Oklahoma, under the first agreement, then it changed to Texas under the second agreement. The children have remained in Texas under such agreement for some seven years now, and the record in this case does not show any change of that agreement. The younger child was in Oklahoma at the time of the hearing, and the older one was in Texas, so that if we assume there was a third agreement which changed the domicile of such younger child to Oklahoma or that jurisdiction was lost by its absence from the state, it would still be proper for the Texas court to retain jurisdiction for custody purposes of both to prevent a multiplicity of suits.

■■ We are of the further opinion that the Texas court could retain jurisdiction even if it can be said that, technically, the domicile of the children is with the mother in Oklahoma. This for the broader consideration of the welfare of the children. What is best for them is paramount to the rights of the parents, and all other things being about equal, the court best able to make the custody decision should take jurisdiction. Here the children had been in Odessa for the past seven years, the older girl is still there, and the younger one had been in Oklahoma only a short time prior to the filing of the suit. Here were the witnesses and here was where the record was made as to the care or lack of care which they had. The language of Justice Hart, speaking for the Supreme Court in Worden v. Worden, 148 Tex. 356, 224 S.W.2d 187, is applicable here:

> "After carefully reviewing the authorities, this court held in Wicks v. Cox, 146 Tex. 489, 493, 208 S.W.2d 876, 878, 4 A.L.R.2d 1, that the 'technical legal domicile of the child in this state is not a sine qua non of child custody jurisdiction on the part of our courts.' Whether our courts have and will exercise jurisdiction depends in part upon domicile and also upon broader considerations, including among other things the physical presence before the court of the child and the contesting parties and the general situation affecting the ability of the court to form an intelligent judgment on what will be best for the child's welfare. Here the facts show that the child and both parents were before the court; the husband is still a Texas domiciliary; most of the relevant facts occurred in Dallas, where the domicile of all of the parties had been until only a few months before the trial, and apparently all important witnesses actually were present and testified. Under these facts we think that the Texas court was in a better position to pass intelligently on the matter of the child's welfare

than the courts of Virginia, and therefore that the Texas court had jurisdiction to award custody."

The judgment of the trial court is reversed and remanded for further proceedings.

FRASER, Chief Justice (concurring).

I should like to add a concurring opinion to the majority opinion written by Justice Preslar.

This is simply a matter of jurisdiction but, as in many such cases, the jurisdictional matter involves the welfare of children, a matter about which the Texas courts have long, and rightfully, been very seriously concerned.

As stated in the majority opinion, the trial court in its original decree divorcing the parents did not, by such judicial decree, award the children to either parent. The judgment recites that the parents have agreed that the mother should have custody. However, I have not seen any cases where such agreement would have any effect whatever without the express approval of the trial court. Courts, not parents, decide who shall have custody of children involved in a matter of this nature. Here the court made no such finding, and did not make any finding as to the fitness of the mother to have the children; so at the conclusion of the divorce the only thing involving the care of the children was this agreement between the divorced mother and father; and it is my opinion that this agreement did no more than to permit the mother to have the supervision and care of the children. As stated in the majority opinion, this she shortly surrendered to the father by her own request, and the children then lived in Odessa, where this decree of divorce was handed down, for a period of seven years or more, and apparently for a considerable time before the divorce. To my mind the domicile of the children was and is clearly defined as being in Ector County, Texas. There is nothing in the record to show that

it was ever changed. The presence of the one child in Oklahoma has been brought about simply by the refusal of the mother to return the child to Texas. Some courts have been influenced by decisions holding that a child's physical presence gives the court of that particular location jurisdiction. I think this is true only when the child needs the attention of the court and some jurisdictional care must be taken of the child in question. But where the child is just on a normal visit and remains there because of the refusal of the parent to return the child to its domicile, this should not, in my opinion, give jurisdiction to any court other than the domiciliary court. If this were not so, any state through which the child might pass or in which it might visit for a few days or weeks could announce that it had jurisdiction, whether the child was in need or trouble or not, simply because of the presence of the child.

Here, the parties submitted themselves to the Ector County District Court for the dissolution of their marriage, and by such action also placed their children in and under the custody and jurisdiction of the Ector County district courts. This jurisdiction has never been surrendered, and to my mind still exists. The only thing contrary to this statement is that the child went on a visit to its mother in Oklahoma, and she refused to return it. I do not believe that this does, or should, deprive the original court of its jurisdiction of children who became, in a manner, wards of the court when their parents submitted their case for divorce to such court.

One of the peculiarities of this case is that the appellant father himself overlooked the actual terms of the judgment of the Ector County court in 1955, and the father apparently believed that the court had awarded custody of the two little girls to their mother. He seemingly entertained this same view when he presented his appeal to this court. But, as stated above, the divorcing court, in 1955, merely recited that the parties had agreed that the mother

should have custody. The court did not give legal dignity or judicial approval and effect to this agreement, but did specifically announce and approve the agreement of the parents with respect to the amount of money to be paid by the father for the children's support. It cannot be overlooked that the court specifically found a certain amount to be proper for the support of the children, but did not make any finding as to the fitness of either parent to have custody, nor did it award custody to anyone. Perhaps the trial court was not ready or willing to so find or hold. This divorcing court having had all parties before it, had the right and the obligation to look to and adjudicate the future welfare of these children. I find nothing in the record that is legally sufficient to cancel or to have canceled the jurisdiction that the Texas court, to my mind, has always had. Having jurisdiction, therefore, of the parties and of the children, the court is empowered and obligated, as it has always been under the state of the record, to adjudicate and pass upon the custody of the children. A suit asking that very thing has been filed, alleging changed conditions.

I further feel that certain elements should be determined, such as the wishes of the children, the fitness of the parents, and many other matters, so that the future welfare of the children can best be regulated. They have lived for the past seven years, and probably a considerable time before the divorce, in Odessa; and certainly that court is in the best position to pass on this matter of custody. In the final analysis it cannot be denied that the welfare of the children is the first and paramount consideration in matters of this sort. The children having lived seven or more years in Odessa before and after the divorce, certainly the court there would be in a position to investigate the welfare of the children during that period of time. He would have available the testimony of school teachers, Sunday school teachers and church authorities, child welfare authorities, friends, neighbors, etc. All of these would surely give useful and valuable information to the court passing upon the question of what should be done about the custody of the children, and whether the present environment is and has been for the best interests of the children.

In conclusion, it must not be overlooked that these young girls lived for seven years in Odessa after the divorce and no one ever agreed, or decreed, that they could or should live anywhere else after they had come back from Oklahoma. This, then, should certainly establish their residence and/or domicile; and certainly, having grown up and lived together, it seems highly unfortunate that they should now, without any apparent wish on their part, be separated and an attempt made to rear them in separate homes. For the above reasons I feel that the District Court of Ector County had, and has always had, and has now, exclusive jurisdiction to determine the proper custodian for these two girls. I therefore respectfully submit this concurring opinion.

CLAYTON, Justice (dissenting).

I respectfully dissent, in part, from the conclusion reached by my colleagues herein. I would reverse the judgment of the trial court in so far as it held that it had no jurisdiction to hear the matter of custody of the older child, Patsy Jean Everson, and remand this part of the cause for trial on the merits; but I would affirm that part of the judgment that found no jurisdiction to hear the cause as to the younger child, Paula Kay, who was apparently in Oklahoma at the time of these proceedings.

In the first place I am not convinced that the judgment of the court that granted the then parties a divorce was not sufficient also to grant custody of the two children to the mother. That judgment recites that the parties had agreed that the defendant mother was to have the custody of the children with the right of the plaintiff father to see the children at all reasonable times and places. The judgment then ordered the plaintiff to contribute a certain

sum monthly for the support and maintenance of the children until further order of the court. While the judgment did not expressly approve the agreement as to custody or by precise wording grant custody of the children to the mother, such a judgment in Duff v. Collins, 225 S.W.2d 213 (Civ. App., Ref., N.R.E.) apparently was construed as an award of custody. The parties here treated it as such, and the father (appellant here) alleges in his "Petition for Change of Custody" that in the decree of the divorce court "the said defendant, Nova Noleta Boydston (then Everson) was granted the custody of the two minor children". No deficiency of the decree in this respect was ever raised by the parties, even on this appeal.

If such decree served to grant custody of the children to the mother, then under the authority of Peacock v. Bradshaw, 145 Tex. 68, 194 S.W.2d 551 (1946) the domicile of the children became the mother's domicile, which under the facts of this case was satisfactorily shown to be in Oklahoma. The same authority further held that jurisdiction to award (and probably to change) custody of a minor child depended upon the domicile of the child. This rule was enlarged, however, by the holding of the Supreme Court in Wicks v. Cox, 146 Tex. 489, 208 S.W.2d 876, 4 A.L.R.2d 1 (1948), which was to the effect that our courts need not decline jurisdiction in custody cases whenever it appeared that the legal domicile of the child was in another state, and further, that technical legal domicile of the child in Texas was not a sine qua non of child custody jurisdiction on the part of our courts. Worden v. Worden, 148 Tex. 356, 224 S.W.2d 187 (1949) held that other matters to be considered, besides domicile, included *physical presence before the court of the child* and contesting parties, and Ex parte Birmingham, 150 Tex. 595, 244 S.W.2d 977 (1952) held that:

" * * * *Except where the child is domiciled or physically present within the state, we have yet to hold our courts to be vested with custody jurisdiction,*

while considerable authority from other sources has expressly rejected jurisdiction where both of these prerequisites are lacking, and this although the contending parents may both be before the court." (Citing cases). (Emphasis supplied).

And DeLaughter v. DeLaughter, Tex.Civ. App., 370 S.W.2d 207 (1963), (Ref., N.R. E.), which reviewed the various authorities, adds:

"It is our further view that where the only basis for jurisdiction is the fact of the *physical presence of the child in this state,* that such physical presence relates not merely alone to the time when the custody suit was filed but also in particular relates to the time of the hearing by the court." (Emphasis supplied).

Applying these authorities, then, to the facts of the present case as I deem them to be from the record, I would hold that the Texas court had jurisdiction to hear the matter of custody as to Patsy Jean Everson, the elder child who was physically present in Texas even though her technical domicile was probably in Oklahoma, and I would reverse the judgment in this cause in this respect and remand the same to the trial court; but I would affirm the finding of lack of jurisdiction of the trial court as to Paula Kay, who I say was neither domiciled nor actually present in Texas at the time of these proceedings in the trial court. Another quotation from the Birmingham case, supra, emphasizes my position here:

"It cannot, in our opinion, be said that in effect the children were present in the forum as a result of having resided (if they actually did so) in Bowie County for some six months and up until only a day before Mrs. McCullough brought her suit. Assuming, as we may do against her interest, that she truthfuly alleged relator to have taken them away, he had power as custodian to do as much, and wheth-

er he did so a day or a week or a month before suit was filed is immaterial, as is also the fact, were it established, that he did so surreptitiously."

However, if it is to be held that the divorce decree did not effectively grant custody of the children to their mother, the ultimate result herein would be the same. If there was no award of custody, the mother's rights, until adjudicated otherwise, would at least be equal in law to those of the father. No suit of any kind was pending at the time the mother refused to allow Paula Kay to return to Texas. The mother's refusal was nothing more than was her right, even though it might result in depriving a Texas court of jurisdiction over the child.

I must add that I am in entire accord with the expression of the majority of this court that the welfare of the children in this, as in any other custody matter, is of primary consideration. But I am constrained to follow the pronouncements of our Supreme Court in such matters, until they may be altered, in order to effect standardized rules of law and procedure and avoid, in so far as possible, a conflict of jurisdictions. Nor do I fully agree with the finding of the majority of this court, inherent in their decision, that the Texas court is necessarily in a better position to judge of the best interests and welfare of these children than an appropriate court in Oklahoma. The nature of this suit is for the award of custody because of changed conditions since the time of the original divorce decree. In support of his prayer, the father alleges that the mother, during the time that the children were with her (which was during the time that they were in Oklahoma), was guilty of certain misconduct toward and neglect of the children, and that she kept them in an environment that was not good for the children. Surely this must be proved, in part at least, by persons resident in Oklahoma, or acts which took place there, which matters are more readily presentable to an Oklahoma court. Furthermore, it may be said in

criticism of the father herein that, after he presumably had come into knowledge of the circumstances alleged in his petition, he allowed the children to be returned to Oklahoma on "visits" to their mother, and apparently made no attempt while the children were with him to remove them from the alleged harmful influences of which he complains, such as by requesting a court to re-examine the issue of custody because of changed conditions.

As stated, I would reverse in part and remand with instructions, and affirm in part.